### John McDonald *vs.* Howard Snelling.

One whose servant so negligently drives in a public street as to come into collision with a carriage, and thereby causes the horse which is drawing the same to take fright and run away, may be held liable in damages to one who is injured by such runaway horse in his flight.

Tort. The declaration was as follows:

" And the plaintiff says that he was possessed and the owner of a certain sleigh, and a certain horse which was harnessed to said sleigh, and the plaintiff was sitting and riding in said sleigh so harnessed, in a certain highway called Eliot Street, in said Boston, into and across Tremont Street; and one Thomas Baker on the same day was possessed of a certain sleigh, and also of a certain horse drawing the same through and along said Tremont Street towards and near said Eliot Street in said Boston. And whereas then on the same day the defendant was possessed of a certain sled or sleigh, and also of certain horses drawing the same through and along said Tremont Street, and the said defendant then and there, by a certain servant of him the said defendant, had the care, government and direction of the said sled or sleigh of the said defendant and defendant's said horses, yet the said defendant, not minding or regarding his duty in this behalf, then and there by his said servant so

negligently and unskilfully managed and behaved himself in this behalf, and so ignorantly, carelessly and negligently drove and managed, guided and governed his said sled or sleigh and horses, that the said sleigh or sled of the said defendant, for want of good and sufficient care and management thereof, and of the horses then and there drawing the same as aforesaid, then and there struck against the said sleigh of the said Baker with such force and violence that the sleigh of the said Baker, wherein he was then sitting and riding as aforesaid, was broken to pieces, by means whereof the said horse of the said Baker was put to fright and ran with great violence, threw out said Baker, and escaping from him ran through and along said Tremont Street to said Eliot Street and into said Eliot Street, and upon, against and over the plaintiff, his said sleigh and horse, with such force and violence that the plaintiff's said sleigh wherein he was then and there sitting and riding as aforesaid was thereby broken to pieces and destroyed, and the plaintiff thrown with great violence from and out of his said sleigh, and his collar-bone broken, and otherwise greatly injured and bruised, and his life endangered, and the plaintiff's said horse was greatly damaged and spoiled. And the plaintiff used due care, and said Baker, his agents and servants, used due care, but said defendant, his agents and servants, did not use due care."

The defendant demurred to this declaration, assigning as causes of demurrer that there is no averment in the declaration that the injury to the plaintiff occurred by reason of or by means of the negligence of the defendant; and that it does not appear from the averments of the declaration that the alleged negligence of the defendant was the proximate cause of the injury to the plaintiff, sufficient in law to render the defendant liable in damages.

This demurrer was overruled in the superior court, and judgment ordered for the plaintiff; and the defendant appealed to this court.

*J. L. Stackpole,* for the defendant, besides cases cited in the opinion, cited Broom's Max. (3d ed.) 202; *Barry* v. *Croskey,* 2 Johns. & Hem. 23; *Tisdale* v. *Norton,* 8 Met. 388; *Denny* v

*New York Central Railroad,* 13 Gray, 481; *Dean* v. *Amer. Life Ins. Co.* 4 Allen, 96; *Delano* v. *Bedford Marine Ins. Co.* 10 Mass 354; *Powell* v. *Gudgeon,* 5 M. & S. 431; *Livie* v. *Janson,* 12 East, 648; *Green* v. *Elmslie,* Peake R. 278; *Everett* v. *The London Assurance,* 19 C. B. (N. S.) 126; *Archer* v. *Williams,* 2 Car. & K. 26; *Ashley* v. *Harrison,* 1 Esp. R. 48; *S. C.* Peake R. 194; *Regina* v. *Pocock,* 17 Q. B. 34.

*J. Nickerson,* for the plaintiff.

FOSTER, J. The question raised by this demurrer is, whether the injury received by the plaintiff was so remote from the negligent act of the defendant that the action cannot be sustained, although the plaintiff was injured without his own fault, ana would not have been injured but for the fault of the defenaant. How far at common law is one guilty of negligence responsible in damages for the consequences resulting from his neglect?

If the present action had been brought against a town, under circumstances similar to those disclosed in this declaration, *Marble* v. *Worcester,* 4 Gray, 395, would be a decisive authority in favor of the defendant. The liability for damages caused by defects in highways is limited to cases where the defect is the direct and immediate cause of the injury. *Jenks* v. *Wilbraham,* 11 Gray, 142. But this statute liability is more narrowly restricted than the rule in actions at common law for damages caused by negligence, in which it is perfectly well settled that the contributory negligence of a third party is no defence, where the defendant has also been guilty of negligence without which the damage would not have been sustained. *Eaton* v. *Boston & Lowell Railroad,* 11 Allen, 500. The extent of the defendant's responsibility cannot therefore be conclusively determined by the rule of *Marble* v. *Worcester,* because the limits of liability under the statute as to defects in public ways and at common law for negligence are not identical. These cases against towns can be reconciled with the general principles of the law only by the consideration that they depend exclusively on a statute provision, within the terms of which they are strictly confined.

Opinions upon questions of marine insurance are frequently quoted, to illustrate the meaning of the maxim, *causa proxima non remota spectatur.* The exigencies of the present decision do not require an elaborate examination of the doctrine in its application to the law of insurance; but a few observations may be useful. Where the immediate cause of loss is a peril insured against, the underwriters are not exonerated by the fact that its original cause was something not covered by the policy. They are liable if the loss ends in a peril insured against, although it began in some other cause. Thus, a loss arising immediately from a peril of the sea, but remotely from the negligence of the master, is protected by the policy; but it by no means follows that, in an action brought against the owner or master for such negligence, the consequent loss of the cargo could not be included in the measure of damages. *Redman* v. *Wilson*, 14 M. & W. 476. On the contrary, where a master unnecessarily deviated from his voyage, and during the deviation a cargo of lime was wet by a tempest, and the bark was thereby set on fire and consumed, the owner was held liable for the fault of his agent the master, and the deviation was deemed to be sufficiently the proximate cause of the loss of the cargo. *Davis* v. *Garrett*, 6 Bing. 716. In a recent insurance cause, one learned judge, Willes, J., said : " The ordinary rule of assurance law is, that you are to look to the proximate and immediately operating cause, and to that only ; " and another, Erle, C. J., said : " The words are to be construed with reference to the known principle pervading insurance law, *causa proxima non remota spectatur;* the loss must be con-nected with the supposed cause of it, and in the relation of cause and effect, speaking according to common parlance." *Ionides* v. *Universal Ins. Co.* 8 Law Times, (N. S.) 705. *Mars-den* v. *City and County Ass. Co.* Law Rep. 1 C. P. 232. But in an action for damages for refusing to receive a ship into a dock, the rule was said to be " that the damage must be proxi-mate (not immediate) and fairly and reasonably connected with the breach of contract or wrong. As to what is so, different minds will differ." *Wilson* v. *Newport Dock Co.* Law Rep. 1 Exch. 186.

Perhaps the truth may be that a maxim couched in terms so general as to be necessarily somewhat indefinite has been indiscriminately applied to different classes of cases in different senses, or at least without exactness and precision; and that this is the real explanation of the circumstance that *causa proxima*, in suits for damages at common law, extends to the natural and probable consequences of a breach of contract or tort; while in insurance cases and actions on our highway statute it is limited to the immediately operating cause of the loss or damage. If this be so, the frequent reference to the maxim in cases like the present is not particularly useful, and certainly not conducive either to an accurate statement of principles or to uniform and intelligible results. In insurance causes the maxim is resorted to as furnishing a rule by which to determine whether a loss is attributable to a peril against which the contract has promised indemnity and its application charges as frequently as it exonerates the underwriter. *Peters* v. *Warren Insurance Co.* 3 Sumner, 389; *S. C.* 14 Pet. 99. *Hillier* v. *Allegheny County Ins. Co.* 3 Penn. State R. 470. The limits of liability and the definition of proximate cause in the law of insurance are too narrow and restricted to be applied to the present case.

Definitions and illustrations drawn from other branches of the law may afford instructive analogies, but for controlling authorities we are to look to adjudications in actions of a similar nature to the present, and arising upon a state of facts more closely resembling those now under consideration. Here the defendant is alleged to have been guilty of culpable negligence. And his liability depends, not upon any contract or statute obligation, but upon the duty of due care which every man owes to the community, expressed by the maxim *sic utere tuo ut alienum non lædas.*

Where a right or duty is created wholly by contract, it can only be enforced between the contracting parties. But where the defendant has violated a duty imposed upon him by the common law, it seems just and reasonable that he should be held liable to every person injured, whose injury is the natural and probable consequence of the misconduct. In our opinion

this is the well established and ancient doctrine of the common law, and such a liability extends to consequential injuries, by whomsoever sustained, so long as they are of a character likely to follow, and which might reasonably have been anticipated as the natural and probable result under ordinary circumstances of the wrongful act. The damage is not too remote if according to the usual experience of mankind the result was to be expected. This is not an impracticable or unlimited sphere of account-ability, extending indefinitely to all possible contingent conse-quences. An action can be maintained only where there is shown to be, first, a misfeasance or negligence in some partic-ular as to which there was a duty towards the party injured or the community generally ; and, secondly, where it is apparent that the harm to the person or property of another which has actually ensued was reasonably likely to ensue from the act or omission complained of. ⩗

Two recent cases, both much considered, sound and consistent with each other, well illustrate the true rule of law. A druggist who carelessly labelled belladonna, a deadly poison, as extract of dandelion, a harmless medicine, and sent it so labelled into the market, was held, by the court of appeals in New York, liable in damages, after it had passed through several interven-ing hands, had been purchased of an apothecary, and adminis-tered by the plaintiff to his wife, who was injured by using it as a medicine in consequence of the false label. *Thomas* v. *Win-chester*, 2 Selden, 397. Here the dealer owed to the public a duty not to expose human life to danger by falsely labelling a noxious drug and selling it in the market as a harmless article. To do so was culpable and actionable negligence towards all likely to be, and who in fact were, injured by the mistake. And the injury that did follow was the natural and easily foreseen result of the carelessness.

On the other hand, where one article, black oxide of manga-nese, in itself harmless, which became dangerous only by being combined with another, was sold by mistake, the plaintiff, who purchased it of a third party and mixed it with another substance, the combination with which caused a dangerous explosion, was

held by this court to have no right of action against the original vendor who made the mistake, for the damages caused by the explosion. *Davidson* v. *Nichols*, 11 Allen, 514. The mistake in regard to an article in its own nature ordinarily harmless, in the absence of contract or false representation, was not a violation of any public duty, or negligence of such a wrongful and illegal character as to render the party who made it liable for its consequences to third persons. Nor was it a natural and probable consequence of such a mistake that this ordinarily innocuous substance would be mixed with another chemical agent, become explosive by the combination, and a third party be thereby injured.

It is clear from numerous authorities that the mere circumstance that there have intervened, between the wrongful cause and the injurious consequence, acts produced by the volition of animals or of human beings, does not necessarily make the result so remote that no action can be maintained. The test is to be found, not in the number of intervening events or agents, but in their character, and in the natural and probable connection between the wrong done and the injurious consequence. So long as it affirmatively appears that the mischief is attributable to the negligence as a result which might reasonably have been foreseen as probable, the legal liability continues.

There can be no doubt that the negligent management of horses in the public street of a city is so far a culpable act that any party injured thereby is entitled to redress. Whoever drives a horse in a thoroughfare owes the duty of due care to the community, or to all persons whom his negligence may expose to injury. Nor is it open to question that the master in such a case is responsible for the misconduct of his servant.

Applying these principles more closely to the facts set forth in this declaration and admitted by the demurrer, we find that by careless driving the defendant's sled was caused to strike against the sleigh of one Baker with such violence as to break it in pieces, throwing Baker out, frightening his horse, and causing the animal to escape from the control of its driver and to run violently along Tremont Street round a corner, near by, into

Eliot Street, where he ran over the plaintiff and his sleigh, breaking that in pieces and dashing him on the ground. Upon this statement, indisputably the defendant would be liable for the injuries received by Baker and his horse and sleigh. Why is he not also responsible for the mischief done by Baker's horse in its flight? If he had struck that animal with a whip and so made it run away, would he not be liable for an injury like the present? By the fault and direct agency of his servant the defendant started the horse in uncontrollable flight through the streets. As a natural consequence, it was obviously probable that the animal might run over and injure persons travelling in the vicinity. Every one can plainly see that the accident to the plaintiff was one very likely to ensue from the careless act. We are not therefore dealing with remote or unexpected consequences, not easily foreseen nor ordinarily likely to occur, and the plaintiff's case falls clearly within the rule already stated as to the liability of one guilty of negligence for the consequential damages resulting therefrom.

These views are fortified by numerous decisions, to a few of which it may be expedient to refer. It was recently held by this court that when a horse was turned loose on the highway, and there kicked a colt running by the side of its dam, the owner of the horse was liable for that damage. *Barnes* v. *Chapin,* 4 Allen, 444. We cannot distinguish between the different ways of letting a horse loose upon the street; whether by leaving him there untied, or leaving a gate open, or, as in the present case, by driving against him, and thus causing him to run away. In *Powell* v. *Deveney,* 3 Cush. 300, the defendant's servant left a truck standing beside a sidewalk in a public street, with the shafts shored up by a plank in the usual way. Another truckman temporarily left his loaded truck directly opposite on the other side of the same street, after which a third truckman tried to drive his truck between the two others. In attempting to do so with due care, he hit the defendant's truck in such a manner as to whirl its shafts round on the sidewalk so that they struck the plaintiff who was walking by, and broke her leg. For this injury she was allowed to maintain her action, the only fault imputable to

the defendant being the careless position in which the truck was left by his servant on the street, which was treated as the sole cause of the breaking of the plaintiff's leg, and in legal contemplation sufficiently proximate to render the defendant responsible. See also *Powell* v. *Salisbury*, 2 Yo. & Jer. 391; *Vandenburg* v. *Truax*, 4 Denio, 464; *Rigby* v. *Hewitt*, 5 Exch. 240; *Greenland* v. *Chaplin*, Ib. 245; *Morrison* v. *Davis*, 20 Penn. State R. 175; *Lynch* v. *Nurdin*, 1 Q. B. 29; *Thomas* v. *Winchester*, *ubi supra*, and cases there cited. When a horse strayed on the highway and there viciously and violently kicked a child, the owner was held not liable in the absence of evidence that he knew the animal was in the habit of kicking; because the act was not one which it was in the ordinary course of nature for a horse of common temper and disposition to do. *Cox* v. *Burbidge*, 32 Law Journ. (N. S.) C. P. 89. See also *Cooke* v. *Waring*, Ib. Exch. 262. But two years later the same court held a defendant liable who had negligently left insecure a gate which he was bound to repair, in consequence of which his horse strayed into the field of an adjoining proprietor and there kicked another horse; because this was the natural consequence of two horses meeting under such circumstances, and such an injury produced by such an animal was deemed to be the proximate consequence of the defendant's negligence. *Lee* v. *Riley*, 34 Law Journ. (N. S.) C. P. 212. See also *Reed* v. *Edwards*, Ib. C. P. 31. In a case where the defendant left on the street exposed for sale a machine for crushing oil cake between rollers, into the cogs of which a little child put his fingers while another boy turned the handle, and the fingers were crushed, the court held that the act was too remote; and Bramwell, B., said: " The defendant was no more liable than if he had exposed goods colored with a poisonous paint, and the child had sucked them;" but the same Baron added, " Further I can see no evidence of negligence in him. If his act in exposing this machine was negligence, will his act in exposing it again be called wilfully mischievous? If that could not be said, then it is not negligence, for between negligence and wilful mischief there is no difference but of degree." *Mangan* v. *Atherton*, Law Rep. 1

Exch. 239. This case has no tendency and indicates no intention to overrule *Dixon* v. *Bell*, 5 M. & S. 198, in which, an injury having been received from a loaded gun, Lord Ellenborough held the owner liable for leaving a dangerous instrument in a state capable of doing mischief, although the mischief was caused by a girl taking it up, pointing it at a child, and snapping the trigger after the priming had been withdrawn.

It may not always be easy to determine whether any particular act of negligence is of such a character as to render the party guilty of it liable to third persons ; or whether the ensuing consequences are so far natural and probable as to impose a liability for them in damages. Cases may be put, falling very near the dividing line, and no rule can be laid down in advance, which will determine all with precision. But the difficulty of applying a principle is a poor argument against its validity, unless one more satisfactory can be proposed in its stead. There may be discrepancies and want of uniformity in the application of the principle to the facts of particular cases, but all the authorities cited concur in the support of the doctrine we have stated, and agree as to the rule by which the extent of liability for consequential damages resulting from negligence ought to be determined.

In the opinion of a majority of the court, the demurrer in the present case must be overruled, because on the statements of the declaration the plaintiff's injury does not appear to be so remote from the negligence of the defendant as to exonerate the latter from liability. When such a question is raised by the pleadings or arises upon agreed or undisputed facts, it is matter of law ; but where the evidence is contradictory, or the inferences to be drawn from it are uncertain, the jury must determine by a verdict whether the facts fall within the rule of law to be laid down on the subject. *Wilson* v. *Newport Dock Co.*, *ubi supra.*

*Demurrer overruled.*