# Richmond

SHARON G. ALEXANDER, AN INFANT, ETC. v. MYREEN MOORE.

MILDRED ALEXANDER v. MYREEN MOORE.

March 8, 1965.

Record Nos. 5880, 5881.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

*George Minor, Jr.* and *T. Ione Diggs* (*William Davis Butts, Jr.; Douglas & Diggs,* on brief), for the plaintiffs in error.

*Berryman Green, IV* (*Breeden, Howard & MacMillan,* on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

The only question here involved is whether the trial court erred in striking plaintiffs' evidence at the conclusion thereof and in entering summary judgment for defendant.

In Record No. 5880, Sharon G. Alexander, an infant, etc., sought a recovery from Myreen Moore, defendant, for personal injuries she sustained when she was struck down by defendant's automobile. It was alleged in the motion for judgment that the sole cause of the mishap was the negligent manner in which defendant operated her vehicle. In Record No. 5881, Mildred Alexander, mother of Sharon, sought to recover from defendant damages for expenses she incurred in providing medical care and treatment for Sharon as well as loss of earnings she suffered. By agreement of counsel it was ordered that the two cases be tried together.

Printed herein is a sketch, not drawn to scale, which shows the intersection of the streets in the vicinity of the accident and the approximate location of plaintiffs' residence and the entrance thereto, the residence of Percell McClenny, a witness, and a parked pickup truck.

On October 15, 1962, at about 8:10 a.m., Sharon Alexander, a pedestrian 5 years old, was struck by a vehicle operated by Myreen Moore eastwardly along Liberty street at or near the point where Liberty intersects Fauquier and Stafford streets in Norfolk. Liberty street runs in a general east-west direction, and Fauquier street extends in a general north-south direction. Fauquier crosses Liberty at a right angle, but its southern portion is offset to the east. Stafford intersects Liberty at a dead end from a northerly direction and is the street next to and west of Fauquier. Stafford and Fauquier form the bottom of a "V" at their intersection with Liberty. Thus, in order for a pedestrian to cross the intersection in a straight line from the bottom of the "V" on the northern side of Liberty to the southwest corner of Liberty and Fauquier he must walk diagonally to his left. In the area are located both residences and business establishments.

The plaintiffs resided in an apartment located in the bottom of the "V". The building was designated as No. 732 Stafford street and the entrance to plaintiffs' apartment was on that street. In the vicinity of the accident Liberty street was 33 feet 8 inches wide, black-topped, straight and level. It was a two-way street, and parking was permitted on both sides. At the time Sharon was struck down a pickup truck was parked on the southern side of Liberty street at the southwest corner of Liberty and Fauquier. The street was dry; the weather was clear, and the sun was shining.

Mrs. Mildred Alexander, Sharon's mother, testified that on the morning of the accident she had served her four children breakfast

and was in the act of preparing one of them for school when Sharon showed her a quarter and said "Mother, I have a quarter; I'm going to the store to get some berets for my hair"; that she spanked Sharon and "put the quarter back into my pocketbook"; that unbeknown to her Sharon took a soda bottle from an adjoining room and "went downstairs"; that in about three seconds she heard "a real loud noise", looked out of a window, saw people running and gathering; and that she became excited, went to the scene and found Sharon lying in the street. She also saw defendant's automobile on the street.

The only eye witness to the accident who testified was Percell McClenny, a school boy 14 years old. He resided at No. 308 Liberty street, which is on the northern side about three houses or apartments east of Fauquier street. McClenny was standing in front of his residence waiting for his brother to join him so that the two could go to school together. He testified:

"A. * * * So, I started to go ahead on to the school, but then I stopped to wait for my brother, so I could go along with him. So, while I was waiting for him, I called up the stairs to him and he told me he would be down in a minute and then I looked and I saw Sharon, she came from around the corner of the house and she started across the street and she looked back and then she started on across, didn't look neither way, started on across the street. When she got almost across, she looked back again and then the car hit her and she rolled about four times, in front of the [parked] truck and she was laying kinda on her side.

\* \* \* \* \* \* \* \*

"Q. Show us what you saw.

"A. She came from on the side of her house and went across the street this way, and she was laying facing this way. When the car hit her, she was lying this way, her head was turned this way.

\* \* \* \* \* \* \* \*

"A. * * * The car hit her and she kinda spinned like and she fell and rolled over.

\* \* \* \* \* \* \* \*

"Q. * * * [D]id you see the car before it struck Sharon that morning?

"A. Yes, sir.

"Q. Where was that car when you first saw it?

"A. It was coming down Liberty Street and it was almost in—

the car was almost in front of Stafford Street, but it wasn't quite there.

"Q. All right, show us on this map just about where the car was when you first observed it. Just about as best you can remember, show us, this is Liberty Street.

"A. It was right about up in here.

"Q. When you first saw it?

"A. Yes, sir.

"Q. Where was she?

"A. Sharon, she was coming out from the side; about the time she got here, the car was up in here.

"Q. Where?

"A. Time she got halfway across the street, the car was right about up in here.

"Q. Then what happened?

"A. She almost got across, but—I thought she was going to make it, but the car hit her before she got in front of the truck almost.

\* \* \* \* \* \* \* \*

"Q. \* \* \* [C]an you tell us whether or not the car slowed up or anything before the impact?

"A. No, sir, it didn't look like it slowed up to me; not until it hit her. When it hit her, it kinda slowed up, it just coasted.

"Q. What did the driver of the automobile do then, as far as you know?

"A. She laid up on the steering wheel and the car was still moving. Then she laid down on the seat of the car; it was still moving. She opened the door and she got out and it was still moving just a little and then it stopped its own self."

Carolyn Saunders and two other school children were standing on the southwest corner of Liberty and Fauquier streets in front of the parked truck. Carolyn did not see Sharon cross the street, nor did she see the direction from which the child came. She testified:

"A. Well, as I was coming—every morning about eight or either something after eight, we come out to go to school and that morning I was coming out to the corner of Fauqueer (sic) and Liberty Street and as I approached the corner, we was waiting for approaching cars to come pass and then all of a sudden we heard a loud noise and heard a crash and glass and the little girl rolled in front of us in front of the drain.

\* \* \* \* \* \* \* \*

"Q. * * * [W]hich way were you looking before the accident happened?

"A. We was looking straight across Liberty Street.

"Q. Did you see the little girl at all?

"A. No.

"Q. Do you know whether or not she was in front of the truck?

"A. She was not in front of the truck, because we was in front of the truck."

In *Gabbard* v. *Knight*, 202 Va. 40, 46, 116 S.E. 2d 73, 77, Chief Justice Eggleston, speaking for the court, said:

"We have many times pointed out that the duty and liability of the driver of an automobile to adults and children are measured by different standards. Ordinary care toward an adult under certain circumstances might be gross negligence toward a child under the same conditions. The driver must increase his exertions in order to avoid danger to children whom he may see, or by the exercise of reasonable care should see, on or near the highway." (Citing authorities.)

Ordinarily, negligence, contributory negligence and proximate cause are jury questions. It is only when reasonable men may draw but one inference from the facts that they become questions of law for the court to decide. *Finck* v. *Brock*, 202 Va. 948, 951, 121 S.E. 2d 373, 375. It is not contended that Sharon was guilty of contributory negligence. Indeed, she could not have been as she was only 5 years old at the time of her injury and was conclusively presumed to be incapable of such negligence. *Grant* v. *Mays*, 204 Va. 41, 44, 129 S.E. 2d 10, 12. Hence, our concern is whether the evidence was sufficient to submit the questions of defendant's alleged negligence and proximate cause to the jury.

"In considering a motion to strike out all the plaintiff's evidence, the evidence is to be considered very much as on a demurrer to the evidence. All inferences which a jury might fairly draw from plaintiff's evidence must be drawn in his favor; and where there are several inferences which may be drawn from the evidence, though they may differ in degree of probability, the court must adopt those most favorable to the party whose evidence it is sought to have struck out, unless they be strained, forced, or contrary to reason." *Green* v. *Smith*, 153 Va. 675, 680, 151 S.E. 282, 283; *Smith* v. *New Dixie Lines*, 201 Va. 466, 470, 111 S.E. 2d 434, 437.

It was stipulated that Miss Moore, the defendant, was driving her vehicle east on Liberty street, and it is clear from the evidence that

her car struck and injured Sharon on Liberty street, which was 33 feet 8 inches wide. The plats and photographs introduced show that the area was a combined residential and business district and that Liberty street was straight for some distance before it intersected Stafford and Fauquier streets. The sun was shining and visibility was good. It was almost time for school to begin and children were in the area.

Percell McClenny said that he first saw Sharon as "she was coming from the side of her house"; that he watched her reach the edge of the sidewalk and proceed to cross the street, and that she was struck as she "got almost across". The exact direction of her crossing was not stated, but after she was struck her body came to rest in front of the parked truck on the southwest corner of Liberty and Fauquier streets. A jury could reasonably find from McClenny's testimony that Sharon was in the act of crossing from the northern side of Liberty to the southern side when she was struck. There was no evidence that there was any obstruction to prevent defendant from seeing the child either before or after she left the sidewalk.

McClenny further stated that when Sharon "was coming out from the side" defendant's vehicle "was almost in front of Stafford Street, but it wasn't quite there"; that he "thought she [Sharon] was going to make it, but the car hit her before she got in front of the truck almost", and that defendant's car did not reduce its speed until after the child was struck. There was no evidence of tire marks on the street.

We are of opinion that it was a question for the jury to determine from all the evidence adduced whether defendant either saw, or by the exercise of ordinary care should have seen, Sharon in time to avoid striking her and that this negligence was a proximate cause of the mishap. Thus, we hold that the trial court erred in failing to submit to the jury the questions of negligence and proximate cause.

Accordingly, the judgment appealed from is reversed and the case is remanded for a new trial.

*Reversed and remanded.*