# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## FREDA FARMER v. VALLEY MARINE CENTER, INC.

January 17, 1966.

Record No. 6060.

Present, All the Justices.

*Arthur E. Smith* and *Charles H. Osterhoudt* (*C. R. Langhammer,* on brief), for the plaintiff in error.

*G. Marshall Mundy* (*John H. Thornton, Jr.; Woods, Rogers, Muse & Walker*, on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

On March 9, 1964, Valley Marine Center, Inc., plaintiff, filed a motion for judgment against Freda Farmer, defendant, to recover the sum of $2,800 for property damage it sustained when an auto-

mobile owned by it and operated by its president and agent, Thomas H. S. Curd, Jr., was struck by a car driven by defendant.

Defendant's motions to strike plaintiff's evidence made at the conclusion thereof and renewed at the conclusion of all the evidence were taken under advisement, and the case was submitted to the jury who returned a verdict for plaintiff in the sum of $2,180. Whereupon, defendant moved the court to set aside the verdict on the grounds that it was contrary to the law and the evidence and that the jury had been improperly instructed. This motion as well as the motions to strike which had been previously made was overruled, and judgment was entered on the verdict. We granted defendant a writ of error.

In her assignments of error, defendant contends that the court erred (1) in refusing to strike plaintiff's evidence and to enter summary judgment for her; (2) in granting Instruction No. 2; and (3) in refusing to set aside the verdict as being contrary to the law and the evidence.

The evidence was somewhat conflicting, but under familiar principles it will be stated and considered in the light most favorable to plaintiff, the prevailing party in the court below.

The mishap occurred on February 19, 1963, at about 8:30 a.m. at the intersection of Corbieshaw road and Ashby street in the city of Roanoke. The intersection was not controlled by traffic signals or signs. Ashby runs in a general north-south direction, and Corbieshaw runs in a general east-west direction. The record does not show the width of either street. Approximately 72 feet south of the intersection, Ashby is intersected by Fleetwood street which runs in a general east-west direction and is parallel to Corbieshaw. There is a slight hill, or knoll, on Corbieshaw about 100 feet west of its intersection with Ashby, and from the crest of this hill the road follows a "mild" downgrade towards Ashby. From Fleetwood to the intersection Ashby follows a "mild" upgrade, and after it crosses Corbieshaw it proceeds up a hill. There is a church in the vicinity of the southwest corner of Corbieshaw and Ashby which obstructs the vision of the driver of a vehicle proceeding eastwardly on Corbieshaw so that he cannot see traffic coming north on Ashby until he is 60 or 70 feet from the intersection. In a similar manner, the church obstructs the view of the driver of a vehicle proceeding northwardly on Ashby of vehicles headed east on Corbieshaw.

On the morning in question it was snowing "rather hard," and

the streets were covered with an accumulation of 3 to 4 inches of snow. Weather conditions were "very bad," and driving conditions were "quite hazardous." Thomas H. S. Curd, Jr., plaintiff's president, was proceeding east on Corbieshaw at a speed of "ten to fifteen miles an hour." His car was equipped with snow tires; its parking lights were on, and its windshield wipers were in use. As he came over the crest of the hill and passed the church he glanced to his right and saw defendant's vehicle headed north on Ashby at a speed of about 5 miles an hour. At that moment his vehicle was 60 to 70 feet from the intersection of Ashby and Corbieshaw, and defendant's car was proceeding through the intersection of Ashby and Fleetwood at a point approximately 80 feet away.

Curd testified:

"Proceeding over the hill, it became apparent to me that I was not only nearer to the intersection than Mrs. Farmer but, in addition, I had a downhill grade. She had an uphill grade. And, in addition to that, my speed of ten to fifteen miles an hour would have easily cleared me well through the intersection, based on her distance and her—my estimate of her speed at that time.

\* \* \* \* \* \*

"As I came down the street—as I mentioned before—I glanced over, I saw her. It became apparent that I would have no difficulty clearing the intersection, assuming she would keep the same speed, which she had, and assuming she would keep a reasonable lookout."

Curd said that he proceeded toward the intersection, looked to his left "to be sure there was nothing coming", saw that "everything was clear", and drove into the intersection. As the front end of his automobile was entering the intersection he again looked to his right and saw defendant's vehicle "more than a car length" away from the intersection. Defendant's speed was increasing, and he "could see then that we were going to have it." He was sure that defendant had not seen him because he "looked directly at her" and "kept hoping" that she would see him, but "she was looking straight ahead". Curd blew his horn and attempted to apply his brakes, but he was "completely unable to stop." The left front of defendant's vehicle struck plaintiff's car on the right side and pushed it "all the way across the street" into a post. Curd stated that he "was almost out of the intersection" at the time of the impact.

Defendant testified that her car was not equipped with snow tires or chains but that its lights were on and its windshield wipers were

in operation. As she approached the intersection of Ashby and Fleetwood she shifted to low gear and came almost to a complete stop. She then drove across Fleetwood and proceeded toward the intersection of Ashby and Corbieshaw at a speed of between 5 and 10 miles an hour. When she reached a point about 25 feet south of Corbieshaw she looked to her left and saw no traffic approaching on Corbieshaw. She then looked to her right, saw nothing coming, and began to cross Corbieshaw. As she "started in the intersection" she saw Curd's vehicle for the first time and realized that "he was not going to stop." She did not apply her brakes, but made an unsuccessful attempt to turn to the right to avoid the collision.

■ Defendant argues that the evidence shows that Curd, the operator of plaintiff's vehicle, was guilty of contributory negligence as a matter of law. She relies heavily upon Code, § 46.1-221, which provides in part:

"Except as provided in §§ 46.1-223 and 46.1-245. when two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right unless a 'Yield Right of Way' sign is posted. * * * The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder."

Defendant says that the two vehicles approached or entered the intersection at approximately the same time; that her car was on the right; that she had the right of way, and that Curd disregarded the statute and failed to yield to her.

Plaintiff, on the other hand, says that there was ample evidence to support a finding that Curd reasonably concluded that he could safely clear the intersection ahead of defendant and that defendant's failure to see the Curd vehicle until her vehicle "started in the intersection" constituted negligence which was the sole proximate cause of the accident. Plaintiff further contends that it was for the jury to decide whether or not the two vehicles approached or entered the intersection at approximately the same time, whether or not defendant was guilty of primary negligence, and whether or not Curd was guilty of contributory negligence.

The mere fact that defendant's vehicle was on the right was not of itself sufficient to give it the right of way over the Curd vehicle pursuant to the provisions of § 46.1-221, *supra*. Under the statute, the driver of the vehicle on the left is required to yield the right

of way to the driver of the vehicle on the right only when both vehicles approach or enter the intersection "at approximately the same time". "The phrase 'at approximately the same time' means that the determination of the question depends not upon a computation of time, but upon the determination of a fact by the jury." *Wallingford and Cooper* v. *Karnes*, 194 Va. 648, 651, 74 S.E. 2d 161. See also *Independent Cab Assn.* v. *Barksdale*, 177 Va. 587, 591, 15 S.E. 2d 112; *Hebner* v. *Sullivan*, 194 Va. 259, 264, 72 S.E. 2d 689; *Ewell* v. *Elliott*, 203 Va. 201, 203, 123 S.E. 2d 391; *Sears* v. *Geyer*, 205 Va. 469, 471, 137 S.E. 2d 873.

Under the evidence adduced the jury had a right to conclude that the two vehicles did not approach or enter the intersection "at approximately the same time", but instead, that plaintiff's car approached and entered it substantially first. In such a situation "neither driver had the right of way over, or was required to yield to, the other. Each was under the duty to exercise ordinary care to avoid a collision." *Pannell* v. *Fauber*, 201 Va. 380, 384, 111 S.E. 2d 445.

It is well settled in our jurisdiction that negligence, contributory negligence and proximate cause are ordinarily questions for the jury. It is only when reasonable men may draw but one inference from the facts that they become questions for the court to decide. *Alexander* v. *Moore*, 205 Va. 870, 875, 140 S.E. 2d 645. On the record before us, we cannot say that Curd was guilty of contributory negligence as a matter of law. We therefore hold that the trial court properly submitted that issue to the jury and that it did not err in refusing to strike plaintiff's evidence.

█ We turn now to a consideration of Instruction No. 2 which was granted over defendant's objection and exception. It provided:

"The Court instructs the Jury that if you believe from the evidence that the Plaintiff's vehicle *lawfully* reached and entered the intersection *before* the Defendant's vehicle reached the intersection then *it was the duty of the defendant to stop her car or reduce her speed in order to avoid a collision with the plaintiff's automobile;* and if you believe from the evidence that the defendant failed to exercise this duty and that such failure was the sole proximate cause of the collision, then your verdict must be for the plaintiff." (Italics supplied.)

We agree with defendant's contention that this instruction erroneously interpreted and applied § 46.1-221, *supra*, which governs the right of way of vehicles at intersections. As pointed out by

defendant, the word "lawfully" is indefinite, and it should have been omitted, unless defined for the jury.

The word "before" is also vague and objectionable. It can be interpreted to mean simply "ahead of". Thus, under the wording of the instruction, if the jury determined that plaintiff's vehicle reached and entered the intersection slightly before defendant's vehicle reached the intersection then plaintiff's automobile would have been in a favored position, when in fact the two vehicles would have approached or entered the intersection "at approximately the same time" within the meaning of the statute, and defendant's vehicle would have had the right of way.

Assuming, *arguendo*, that plaintiff's vehicle reached and entered the intersection substantially ahead of defendant's car, the jury was not entitled under the statute to find that plaintiff's vehicle had the right of way, as the instruction permitted it to do. We said in *Independent Cab Assn.* v. *Barksdale, supra,* 177 Va. at p. 591, " \*\*\* there can be but one right of way and that is with the vehicle on the right, unless such right of way has been forfeited under the provisions of the statute."

Moreover, Instruction No. 2 told the jury that if plaintiff's vehicle reached and entered the intersection before defendant's car reached it, "then it was the duty of the defendant to stop her car or reduce her speed in order to avoid a collision with the plaintiff's automobile." The effect of this language was to make defendant an insurer. It imposed upon her an absolute duty to stop her vehicle or reduce her speed in order to avoid a collision. A driver is not required to know that he is absolutely safe before he takes a given course of action. He is only required to exercise ordinary care or such care that a reasonably prudent person would exercise under the existing circumstances. *Smith* v. *Carpenter,* 198 Va. 91, 93, 92 S.E. 2d 275. Hence, the instruction should have merely required defendant to exercise ordinary care in the operation of her vehicle to avoid the collision.

On the whole, the instruction was prejudicial to defendant. The effect of it was to tell the jury, in contravention of the statute, that if plaintiff's vehicle reached and entered the intersection first it had the right of way and defendant was under a duty to yield to it.

Because of the error in granting Instruction No. 2, the judgment appealed from is reversed; the verdict set aside, and the case remanded for a new trial on all issues.

*Reversed and remanded.*