Della **FLETCHER**, Appellant,

v.

Frank M. **HAND**, Appellee.

No. 19303.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 6, 1965.

Decided Jan. 13, 1966.

Petition for Rehearing En Banc
Denied Feb. 18, 1966.

Mr. Roland D. Hartshorn, Arlington, Va., for appellant.

Mr. James A. Welch, Washington, D. C., with whom Messrs. H. Mason Welsh, J. Harry Welch, J. Joseph Barse and Walter J. Murphy, Jr., Washington, D. C., were on the brief, for appellee.

Before FAHY, McGOWAN and TAMM, Circuit Judges.

McGOWAN, Circuit Judge.

In this suit for alleged negligence by a physician in the treatment of a hip fracture suffered by appellant, the District Court elected to try first an affirmative defense of release. After the taking of evidence on this issue, the court directed a verdict for the appellee doctor. This appeal is from that action. We affirm, although we emphasize that, as will be more fully set forth hereinafter, we act solely by reference to Virginia law.

## I

On January 14, 1956, appellant, while babysitting for her daughter at the latter's home in Virginia, had injured her knee. In a suit filed by appellant against her daughter in a Virginia state court on October 2, 1957, she alleged that this injury was due to her daughter's negligence in placing a magazine rack in such a position as to present a hazard to appellant. The record before us reflects negotiations with the daughter's insurance carrier which eventuated in a payment by it of $9000.00 to appellant and a consequent dismissal of the Virginia suit without trial on May 15, 1958. As a part of this settlement, appellant executed and delivered the release relied upon here.[1]

On July 14, 1957—some months before the Virginia lawsuit was instituted —appellant fell and sustained the hip fracture. Appellee, who had treated her without complaint for the knee injury, also served as her attending physician in respect of the hip injury. It appears to have been appellant's belief that the fall causing the hip fracture was due to her injured knee. The record indicates that she said as much to appellee on the day of the fracture, and also at a later date to a doctor for the daughter's insurance carrier. In any event, there was put in evidence in the District Court the motion for judgment for $25,000 filed by appellant in her Virginia suit. In relating the damages caused by her daughter's asserted negligence, she stated that "[A]s a further result of said accident, [appellant's] knee gave way on, to-wit, July 14, 1957, and she fell and broke her hip." This was immediately followed by the prayer for relief in these terms: "Wherefore by reason of the premises, the undersigned has been injured and suffered damages in the amount of $25,-000.00."

In a review of his client's situation in connection with the settlement negotiations, appellant's Virginia lawyer asked appellee for a current medical report. This was supplied in the form of a letter, dated February 12, 1958. After reciting appellant's initial representation to him that it was the knee injury which led to the hip fracture, appellee concluded his report as follows:

Following a thorough review of this case a re-evaluation of the amount of permanent-partial disability has been determined. It is

---

1. The release ran to the daughter and her husband, and "all other persons, firms or corporations liable or who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred

on or about the 14th day of January, 1956 at or near 600 Magarity Road, Falls Church, Fairfax County, Virginia." It recited also appellant's understanding of its purpose as that of "making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident."

my opinion, considering the factors of previous disability to left knee; union, contour and function obtained, that a fifty (50) per cent permanent partial disability, involving the entire left lower extremity, exists at this time as a result of injuries sustained on January 15, 1956 and July 14, 1957.

On the same date (i. e., February 12, 1958), appellee submitted to appellant's Virginia lawyer his bill for $866.75, described as due in respect of the "[E]xamination and treatment of left knee and left hip." Appellee's report and bill were in turn submitted to the daughter's insurance carrier; and a letter by the latter's Virginia counsel shows the $866.75 as listed in the total of special damages attributable to the daughter's negligence, if such there was. The $9,000 settlement followed thereafter.

Appellant brought this suit in the District Court on May 4, 1961. It alleged the fact of the hip fracture, and that appellee had been negligent in his care and treatment of that condition. The allegations of neglect generally centered around an asserted failure of appellee to recognize or discover that there had been, in the course of appellant's supposed recovery, a non-union of the neck of the left femur, resulting in the eventual necessity of corrective treatment by another physician who allegedly did diagnose the problem accurately when appellant at length sought further medical advice in 1960. Averring that appellee's "professional care and diagnosis failed to exercise that degree of skill which is ordinarily expected among orthopedic surgeons * * * of the locality," appellant claimed damage in the amount of $150,000.

## II

Both parties to this appeal have assumed the applicability of Virginia law to the issues we are called upon to decide, and have in substance invited us to dispose of this appeal by reference to that law. The parties also seem to be in accord in urging upon us that that law is primarily to be gleaned from Corbett v. Clarke, 187 Va. 222, 46 S.E.2d 327 (1948), and that just disposition of this appeal depends upon an accurate reading of that case in relation to this. We have no reason to think that the parties' emphasis upon Virginia law is misconceived, and we abide by their approach in this regard. Needless to say, this means that we address ourselves hereinafter only to Virginia law, and that what we say or do has relevance only to it.

Appellee's theory in tendering the release as a complete defense can be articulated in this wise: Virginia follows the rule "that where one has received a personal injury as a result of the negligence of another and pursues due care in the selection of a physician or surgeon to treat the injuries and they are aggravated by the negligent treatment of such physician or surgeon, the person causing the original injury is liable for the resulting damage to the full extent." Fauver v. Bell, 192 Va. 518, 65 S.E.2d 575, 578 (1951). It is equally well settled that "the release of one joint tort-feasor releases the other jointly liable for the same wrong or injury." Lackey v. Brooks, 204 Va. 428, 132 S.E.2d 461, 464 (1963). To the extent that the original tort-feasor is accountable for the damage caused by medical negligence in the treatment of the injuries caused by him, he stands in the relationship of a joint tort-feasor to the offending physician; and a release to the former discharges the latter. Translated into the terms of this case, if the daughter's liability extended to the hip fracture, it must be taken to have included aggravating damage caused by negligent medical treatment of that fracture; and a release of the daughter operated to extinguish appellee's liability for any damage for which the daughter could have been made to respond.

The case of Corbett v. Clarke, upon which both parties rely, is the Virginia case nearest on its facts to this, and appears to be the only authoritative detailed discussion of how Virginia law operates

in this situation. There, the plaintiff had had a tooth fixed by Dentist No. 1, had complained of negligence by that dentist, and had eventually given him a release as a part of a settlement of the claim. The plaintiff had gone to Dentist No. 2 (Dr. Clarke, the defendant), apparently for two purposes, one, to have the negligent work done by Dentist No. 1 corrected, and, two, to have some work done on an entirely different tooth. In doing this latter work, plaintiff alleged that Dr. Clarke, after operating upon the gum, had left in the incision some cotton or other foreign substance. Plaintiff expressly alleged that this was such an extraordinary lapse as to constitute gross, as distinct from ordinary, negligence. Although the facts as alleged looked very much in the opposite direction, Dr. Clarke took the position that the two injuries were inseparably connected; and that, therefore, a release given in respect of the first would operate to discharge the perpetrator of the second who, because of this asserted connection, must be taken to be a joint tort-feasor.

The Virginia court, although obviously skeptical of Dr. Clarke's ability to establish any necessary connection between the two injuries if the facts proved to be at all as alleged, said that it would give him that opportunity in a trial of the case.[2] Assuming that he could, then the trial court would have to turn its attention to the release, and the plaintiff would be given an opportunity to prove her allegations of gross negligence. These two positions taken by the court in reversing and remanding rest upon an extensive discussion by the court of the law of releases given by the first tort-feasor in terms of their applicability to subsequent medical negligence. The court said that Virginia accepted the general rule to the effect that one who commits a tort which necessitates medical care is liable for the damage which results from the negligent rendition of such care. It did not say that this rule applies only to medical care rendered in respect of the first and immediate injury. Indeed, it seemed to contemplate that the liability might, if allegations of a causal connection could be proved, extend to damages caused by negligent medical care of an injury suffered in a quarter and at a time different from the original injury. This contemplation seems to have been conscious, as evidenced by the quoting with approval of the following language from the Massachusetts case, McDonald v. Snelling, 14 Allen (Mass.) 290, 92 Am.Dec. 768 (1867):

> "The damage is not too remote if according to the usual experience of mankind the result was to be expected. * * * *The test is to be found, not in the number of intervening events or agents, but in their character,* and in the natural and probable connection between the wrong done and the injurious consequence." 187 Va. 222, 46 S.E.2d at 328. (Emphasis supplied.)

The Virginia court also addressed itself to the kind of medical negligence for which the original tort-feasor would be held accountable. It embraced quite clearly the ALI view that this negligence must be of a not unusual kind. In other words, the original tort-feasor will be held to answer only for ordinary negligence, and not for gross negligence. RESTATEMENT (SECOND), TORTS § 457, comment d (1965). The Virginia court appeared to think that, if the plaintiff in *Corbett* could prove her claim of the sewing up of a foreign substance in the wound, the plaintiff could be taken as having proved her allegation of gross negligence. In any event, the plaintiff was given that chance.

Unlike the Virginia court in *Corbett*, we see no need to send this case back for a determination of whether the knee injury and the hip fracture were

---

2. In *Corbett*, the trial court had, without hearing any evidence, given effect to the release as a complete defense. This contrasts with the situation before us, where the trial court's direction of a verdict on the release issue came only after a trial of that issue.

so causally related as to render appellant's daughter liable for the damages caused by medical negligence in the treatment of the latter. The record made at the hearing establishes an affirmative assertion by appellant herself of such a connection, made under circumstances which preclude a denial of that connection now. She clearly claimed such a relationship in her Virginia suit against her daughter, and her release of that claim is surely as broad as the claim itself. The hip fracture may or may not have been, in fact or in law, a foreseeable consequence of the daughter's initial neglect to which the daughter's liability extended. But appellant has so represented it in her Virginia suit, and the release settling that suit must be construed in the light of that representation.[3]

■ This leaves the second inquiry contemplated in the *Corbett* remand, namely, was the alleged medical negligence of a grossly derelict nature? The relevance of this to the legal effect of the release lies, of course, in the circumstance that appellant cannot be taken to have released anything more than that for which the daughter was accountable. *Corbett* indicates quite plainly, in disposition as well as in discussion, that the reach of the daughter's liability for subsequent medical negligence is to be confined to risks normally inherent in medical care and not, in the words of the Restatement relied upon by the Virginia court, to "misconduct which is extraordinary and therefore outside of such risks,"

or, as the court itself put it, "if the negligence of the second and subsequent tort-feasor is extraordinary or gross and could not have reasonably [been] anticipated."

■ We do not believe that appellant has here alleged negligence on the part of appellee which, within the contemplation of the Virginia rule, remotely approximates that customarily comprehended within the characterizations of extraordinary or gross.[4] Thus it is that we see no occasion for a remand to inquire into allegations of negligence which, even if found to be true, establish a dereliction which fell within the range of the daughter's liability. For we think it unmistakable from this record, read in the light of Virginia law as that law is exhibited in Corbett v. Clarke, that appellant has claimed, and has released, everything for which her daughter was liable.

The judgment appealed from is
Affirmed.

FAHY, Circuit Judge (dissenting).

The release the court holds to bar appellant's claim against appellee for his allegedly negligent treatment of an injury to appellant's hip runs in terms not to appellee but to John L. Sarver and Elsie L. Sarver and all others "on account of all injuries, known or unknown, * * * which have resulted or may in the future develop from an accident which occurred on or about the 14th

3. See Harris v. City of Roanoke, 179 Va. 1, 18 S.E.2d 303 (1942); Shortt v. Hudson Supply & Equipment Co., 191 Va. 306, 60 S.E.2d 900, 902 (1950); Bittner v. Little, 270 F.2d 286, 289 (3d Cir. 1959). Compare Katzenberger v. Bryan, 206 Va. 78, 141 S.E.2d 671 (1965).

4. Appellant's allegations in her complaint of specific acts of negligence are, without exception, stated in terms of omission rather than commission; and these failures to act are comprehended mainly of allegedly faulty diagnosis. They contrast strongly with the averment in *Corbett* that the defendant dentist had closed a surgical incision without removing the surgical materials—the classic case of gross medical negligence. Moreover, the cases cited by the Virginia court in this phase of its opinion are instructive as to the kind of negligence which it regarded as not to be reasonably apprehended by the first tort-feasor. Purchase v. Seelye, 231 Mass. 434, 121 N.E. 413, 8 A.L.R. 503 (1918) (doctor asked to treat injury to right groin operates upon the left); Parkell v. Fitzporter, 301 Mo. 217, 256 S.W. 239, 29 A.L.R. 1305 (1923) (metal buckle and clothing sewn into the wound by attending physician; Piedmont Hospital v. Truitt, 48 Ga.App. 232, 172 S.E. 237 (1933) (one taken to hospital for injuries suffered in auto accident burned by nurse using an electric pad in course of treatment).

day of January, 1956 at or near 600 Magarity Road, Falls Church, * * *." The accident referred to was a fall which injured appellant's knee. Forecasting Virginia law our court now holds that this release of the Sarvers and others for damages attributed to the knee injury of January 1956 releases appellee of liability for damages charged to his negligent treatment of appellant's hip injury in July 1957. His treatment of the hip continued according to the complaint until March 21, 1960. I find no basis in Virginia law for this conclusion, even though I assume that the pleadings in appellant's earlier suit against the Sarvers in Virginia, resulting in the release, attributed the hip injury itself, though not the negligence of appellee, to the original knee injury. The court relies on the case of Corbett v. Clarke, 187 Va. 222, 46 S.E.2d 327, notwithstanding the Virginia court held in *Corbett* that damages for the second tort there involved were not barred by release of the first tort-feasor.

In *Corbett,* the court states the general rule to be that if an injured person uses ordinary care in selecting a physician for treatment of his injury the law regards aggravation of the injury resulting from the negligent act of the physician as part of the immediate and direct damages which naturally flow from the original injury. The court cited a number of cases for the proposition that "A settlement with the original tort feasor operates as a release of the negligent physician." The court then states that this rule is based on the theory that the aggravation of the injury by the negligent treatment of the physician is a result that might reasonably have been anticipated. The court adds that this theory embraces the much discussed question of what is proximate cause, and refers approvingly to the discussion of

this question in McDonald v. Snelling, 96 Mass. (14 Allen) 290. It is there held

* * * that, when a person violates a duty imposed upon him by common law, it is just and reasonable to hold him liable to every person injured whose injury is the natural and probable consequence of his misconduct, if the injury is of a character likely to follow and which, under ordinary circumstances, might reasonably have been anticipated from the wrongful act. "The damage is not too remote if according to the usual experience of mankind the result was to be expected. * * * The test is to be found, not in the number of intervening events or agents, but in their character, and in the natural and probable connection between the wrong done and the injurious consequence. * * *"[1] 187 Va. 222, 225, 46 S.E.2d 327, 328.

The *Corbett* court then states that the concept of proximate cause is recognized and applied in Virginia; that is, negligence carries with it liability for consequences which, in the light of attendant circumstances, could reasonably have been anticipated by a prudent man, but not for casualties which, though possible, were wholly improbable: "One is not charged with foreseeing that which could not be expected to happen."

In our case the gap between the negligence charged to each of the two tortfeasors is wider than in *Corbett.* We begin with the tort of January 14, 1956, causing injury to the knee, followed July 14, 1957, by the injury to the hip, followed by the alleged tort in treatment of the hip, the gravamen of the complaint. The chain of events thus consists of three links, first the negligence causing the accident injuring the knee, then the accident injuring the hip, then the alleged

---

1. The doctrine that one liable for injury due to his own tort should foresee and be held liable for aggravation of the injury by the negligence of the physician called to treat the injury has sufficient difficulties not to be extended, especially to a case where the negligence charged to the physician extends over a long period of time. The courts should not readily assume that negligent treatment by a physician should reasonably be anticipated to flow from an injury caused by the misconduct of another.

negligent treatment of the hip continuing for more than two years. There were but two links in *Corbett*, the negligence of Dentist No. 1, followed by the negligence of Dentist No. 2. It is by no means clear to me from the opinion in *Corbett* that the Virginia court would hold as a matter of law that if appellant's hip were negligently treated by appellee over a long period of time subsequent to July 1957 such negligence was a joint tort with the Sarvers' negligence which caused the injury to the knee in January 1956, even though we attribute the hip accident itself to the knee accident.

There is every reason to believe that in our case the Virginia court would hold that the issue of proximate cause is for a jury to decide.

> Ordinarily, negligence, contributory negligence and proximate cause are jury questions. It is only when reasonable men may draw but one inference from the facts that they become questions of law for the court to decide.

Alexander v. Moore, 205 Va. 870, 875, 140 S.E.2d 645, 648–649. And see Hanna v. Fletcher, 97 U.S.App.D.C. 310, 316, 231 F.2d 469, 475, 58 A.L.R.2d 847.

There is a simpler and still stronger reason for my disagreement with the majority opinion. Our court now holds that *Corbett* stands for the proposition that in Virginia, even if the relationship between the two injuries is so close as to be one of proximate cause, nevertheless if the negligence of appellee [Dentist No. 2 in *Corbett*] was gross rather than ordinary the release of the Sarvers and others here [Dentist No. 1 in *Corbett*] would not release appellee; that is to say, the majority opinion of our court interprets *Corbett* to mean that the Virginia court, in reversing the trial court for having released Dentist No. 2, remanded the case to afford plaintiff an opportunity to

prove that the negligence of Dentist No. 2 was gross, in which event he was not released of liability by the release of Dentist No. 1.[2] Accepting this interpretation of *Corbett* reversal would seem to be required here as it was in *Corbett;* for the question whether appellee's negligence was gross or ordinary should have been left for the jury to decide. It has been held in Virginia that "[i]f a number of negligent acts are so combined that reasonable men may differ as to whether their cumulative effect shows a form of recklessness or a total disregard of all precautions akin to willful and wanton misconduct, it is a question for the jury whether such negligence amounts to gross negligence. [Citations omitted.]" Kennedy v. McElroy, 195 Va. 1078, 1082, 81 S.E.2d 436, 439 (1954). Appellant's complaint did not use either the term ordinary or gross in describing appellee's negligence. This is immaterial. The pleading is governed by the Federal Rules of Civil Procedure. Under those Rules if the facts alleged and proved could be found by the jury to amount to gross negligence recovery would not be defeated by the omission of the complaint to describe the negligence as gross. Hollander v. Davis, 120 F.2d 131, 132–133 (5th Cir.). And see Conley v. Gibson, 355 U.S. 41, 45–46, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80; Francis O. Day Co. v. Shapiro, 105 U.S.App.D.C. 392, 396, 267 F.2d 669, 673. I set forth in an Appendix to this opinion excerpts from appellant's complaint describing the negligence charged to appellee. If proved, the jury could find gross negligence. That being so, then under the very interpretation of *Corbett* now adopted by this court, we should reverse and remand, as in *Corbett.* I accordingly dissent from affirmance.

### APPENDIX [1]

11. Plaintiff avers that defendant, during and throughout the period that he

---

2. It is not clear to me that the reversal turned upon whether the negligence of Dentist No. 2 might be found to be gross. Neither party to the present appeal has referred to *Corbett* in those terms nor briefed the relevance to our case of the question of gross as distinguished from ordinary negligence, the turning point of the majority opinion.

1. Excerpts from appellant's complaint in the District Court.

attended plaintiff, negligently and carelessly cared for, treated and diagnosed plaintiff's injuries and condition; and in said professional care and diagnosis failed to exercise that degree of skill which is ordinarily [2] expected among orthopaedic surgeons and specialists of the said locality; that whatever x-rays that were taken of plaintiff were taken in a negligent manner or negligently analyzed; that defendant continued to negligently diagnose plaintiff's condition and continued to negligently care for plaintiff until she terminated his care and treatment on or about March 21, 1960, at which time defendant had neither recommended nor administered further treatment to plaintiff for the said non-union of said femur. More particularly, plaintiff species and attributes the following professional neglects by acts or omissions to defendant, to-wit:

(a) Failure to take necessary x-rays to follow progress of plaintiff's injuries;

(b) Failure to recommend further treatment and corrective procedures after operation on the left hip;

(c) Failure to advise plaintiff of non-union of left femur;

(d) Failure to advise plaintiff of said suspected non-union;

(e) Failure to diagnose and discover said non-union;

(f) Failure to properly analyze symptoms related by plaintiff and physical evidence of deformity of the left lower extremity;

(g) Failure to diagnose the necrotic condition of the head of said left femur;

(h) Failure to promptly remove the loose Knoles pins from plaintiff's left thigh;

(i) Failure to recognize the significance of the said loose Knoles pins, viz., a non-union of said left femur;

(j) Failure to communicate the significance of said loose Knoles pins as aforesaid; and

(k) Failure to caution plaintiff and otherwise treat plaintiff so as to eliminate further injury to plaintiff's left hip.

[2. The allegation here that appellee did not exercise the skill ordinarily expected is not a description of his negligence as ordinary, but may be read "not even ordinary."]