# Richmond

MAY SPEED SEXTON v. WILLIAM A. STROMAN.

April 25, 1966.

Record No. 6140.

Present, All the Justices.

*Alphonse J. Audet, Jr.* (*John P. Arness; Hogan & Hartson*, on brief), for the plaintiff in error.

*Atwell W. Somerville* (*Hugh R. Ross; Somerville, Moore & Joyner*, on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

In this appeal May Speed Sexton, plaintiff, asks us to decide that William A. Stroman, defendant, was as a matter of law guilty of negligence which was the proximate cause of the collision involving their respective automobiles; to hold that the judgment for defendant was plainly wrong or without evidence to support it, and to grant her a new trial on the issue of damages only. Defendant has assigned as a cross-error the refusal of the trial court to submit the issue of contributory negligence to the jury.

At the conclusion of all the evidence and after the instructions of both parties had been considered and ruled upon, plaintiff moved the court to direct a verdict in her favor "on the question of liability". This motion was overruled, and the case was submitted to the jury. During the course of their deliberations the jurors inquired of the court whether they could find plaintiff negligent, and they were instructed that they could not do so. Shortly thereafter a verdict was returned for defendant. Plaintiff moved the court to set aside the verdict on the ground that it was contrary to the law and the evidence and to "enter judgment" for her. This motion was also overruled, and final judgment was entered on the verdict. We granted plaintiff a writ of error.

The evidence was conflicting in certain material respects, but under familiar principles the jury by its verdict has resolved all such conflicts in favor of defendant, the prevailing party, and defendant is entitled to have the evidence stated, and reasonable inferences to be drawn therefrom considered, in the light most favorable to him.

The mishap occurred on November 21, 1961, at about 4 p.m. on U.S. Route 29 approximately two-tenths of a mile north of Brightwood in Madison county. The weather was clear; the hard-surfaced road was dry, and the speed limit was 55 miles an hour. The highway consists of one northbound lane and one southbound lane which are divided by a white line. At the scene it is straight and "almost level", but to the north "a little stretch" there is "a dip down" which obstructs a southbound vehicle from the vision of a motorist proceeding in the northbound lane.

Plaintiff and defendant were proceeding north. Plaintiff was driving a 1962 Ford, and defendant was operating a 1961 Cadillac. At some point south of the accident scene, plaintiff's car passed defendant's vehicle. Defendant testified:

"Well, this car came by me with this young lady [plaintiff] in it it came by me, that is got in ahead of me and cut in directly in front

of me and followed the car immediately in front of me. She she seemed to be very much in a hurry because she was trying to pass that car, she would pull out to the left, as though she was going to pass, and then flash her brake light and then pull back in; she did that several times."

Defendant further stated that after plaintiff's car had passed his vehicle he reduced his speed "to get more distance between her car and my car"; that he was going "about fifty miles an hour"; that plaintiff's car did not get out of sight after he lengthened the distance; and that "a short time" thereafter he noticed "all at once" that plaintiff's car had stopped in the northbound lane about 100 to 150 feet ahead. Defendant said, "All of a sudden I saw her stopped." He also said that he had been "looking right down the road, watching the traffic" and that plaintiff did not give any type of signal or warning "of what she was going to do" (that she intended to stop). Defendant realized that he "was in a predicament" and applied his brakes, but he was "not quite" able to bring his vehicle to a standstill before the collision occurred. The front of his automobile struck the rear of plaintiff's car, and according to a witness the accident appeared to be "a very minor thing".

The record discloses that after plaintiff's car passed defendant's vehicle prior to the accident it got behind vehicles which were proceeding in a northerly direction. Mrs. Blankenbaker, the driver of the vehicle immediately in front of plaintiff, intended to make a left turn across the southbound lane in order to gain access to her private driveway. Before the turn could be made, however, she had to bring her vehicle to a complete stop in the northbound lane because of approaching southbound traffic. Plaintiff was therefore obliged to bring her car to a full stop, and it was at this point that the mishap occurred. Plaintiff admitted that she gave no signal of her intention to stop other than her brake lights. However, she testified that she asked trooper Oliver, the investigating officer, to check her brake lights because defendant had said to her, "You stopped like that and you had no brake lights."

Oliver testified that shortly after the accident he obtained a statement from both plaintiff and defendant made in the presence of each other with regard to the manner in which the collision took place. He said:

"Mrs. Speed [plaintiff] told me that the car in front of her was making a left turn and that this car in front of her stopped on the

highway; she stated that she stopped and was standing still when something hit her car in the rear."

When asked for defendant's version of the accident, he said:

"Mr. Stroman stated that the Ford, or the other car had passed him and had gotten back into the lane in front of him when the traffic in front of her [plaintiff] stopped and that she stopped suddenly and he hit her in the rear."

Trooper Oliver found four skid marks, "two long ones and two short ones", in the northbound lane. Each of the marks was "approximately the width of the wheels on an automobile". The two long marks "began first", were approximately 54 feet long, and "were almost straight up the northbound lane". The two short marks were about 24 feet long and "led off from the long ones * * * to the right." One of the short marks lay between the two long ones. The two vehicles had been moved to the east side of the highway by the time the trooper arrived at the scene, and he was unable to connect the skid marks with either of them. He stated, however, that he knew of no other accident that had occurred at the scene that day.

Oliver also found some clear glass in the northbound lane at the northern end or "just ahead" of the skid marks. The right front headlight of defendant's vehicle had been broken out and had contained the same type of glass as that found on the highway. The front bumper of defendant's car was also damaged. The "trunk, deck and rear bumper" of plaintiff's car had been damaged. Oliver estimated the damage to each vehicle at approximately $100. He did not recall "right offhand" whether he checked the equipment in the vehicles, but he said, "I normally check it. I have got in my accident pad that neither vehicle had equipment defects." However, he was not specifically asked whether he checked the brake lights on plaintiff's automobile.

In support of her contention that the evidence was not sufficient to sustain the jury's verdict plaintiff argues, *inter alia*, that there was no evidence that she made a sudden stop; that defendant failed to see her brake lights when she stopped her vehicle, and that as a matter of law defendant's testimony convicts him of negligence which was "the proximate cause" of the accident and her injuries.

Defendant, on the other hand, says that the conflicting evidence presented a jury question as to whether he was guilty of negligence which was "a proximate cause" of the mishap and that the jury simply did not construe the facts of the case and the inferences to be drawn therefrom as plaintiff had hoped.

In 13 M.J., New Trials, § 31, p. 657, it is said:

"* * * If there is evidence before the jury, of a character not physically impossible or inherently incredible, which, if credited by the jury, is sufficient to sustain the verdict, it is reversible error in the trial court to set it aside. If a condition of facts is such that the jury may deduce from them more than one inference or conclusion, the court, upon a motion to set aside their verdict, has no such discretion, but is bound down to that interpretation of the facts, and is constrained to adopt that conclusion from the evidence which the jury have sanctioned by their verdict. The jury are the sole judges of the weight of the evidence and the credibility of the witnesses, and if there is credible evidence to support their verdict, it cannot be disturbed." See also Burks, *Pleading and Practice*, 4th ed. § 325, p. 604, *et seq;* Code, § 8-491.

"Ordinarily, negligence, contributory negligence and proximate cause are jury questions. It is only when reasonable men may draw but one inference from the facts that they become questions of law for the court to decide. *Finck* v. *Brock,* 202 Va. 948, 951, 121 S.E. 2d 373, 375. * * *" *Alexander* v. *Moore,* 205 Va. 870, 875, 140 S.E. 2d 645. See also *Hudgins* v. *Jones,* 205 Va. 495, 499, 138 S.E. 2d 16; *Beasley* v. *Bosschermuller,* 206 Va. 360, 365, 143 S.E. 2d 881; *Farmer* v. *Valley Marine Center, Inc.,* 206 Va. 737, 741, 146 S.E. 2d 265.

On the record before us, we cannot say as a matter of law that defendant was guilty of negligence which was a proximate cause of the accident. The factual situation presented a jury question, and the evidence was sufficient to sustain a verdict for defendant. The jury could have properly concluded from the testimony, as well as the two sets of skid marks and the location of the broken headlight glass, that both vehicles stopped suddenly. It could have also properly found that plaintiff gave no signal or warning of her intention to stop; that the chain of events just prior to the mishap occurred in a matter of seconds, and that defendant operated his automobile with as much care as a reasonably prudent person would have done under the same or similar circumstances.

Plaintiff also contends that the court's judgment was plainly wrong because the court "had a clear duty to set aside the verdict when it was of the opinion that there was a miscarriage of justice." When the trial judge overruled plaintiff's motion to set aside the verdict as being contrary to the law and the evidence he said:

"Gentlemen, I have considered this case very carefully. I have

considered this on the motions that were made in the previous trial, and I have considered it on this record.

"And, *while I am convinced that there—I feel there has been a miscarriage of justice;* I also feel that, taking all the evidence of Mr. Stroman as they have to construe it with emphasis in the most favorable light to sustain a verdict there is evidence on which the Jury might have said, 'This man didn't do anything that a reasonable man wouldn't have done.'

"I don't think it's right, but I just can't—I don't feel that I ought to set the verdict aside. Maybe the Court of Appeals will.

"I'll have to sustain the verdict. There are conflicts in the evidence, of course. Mr. Stroman's testimony is entirely inconsistent with Mrs. Blankenbaker's testimony. Some of it has got to be inconsistent, because after all the estimates of the distance he was behind her, and her estimates vary somewhat, and not expecting the car to stop on the highway—there was no reason for it to stop, and all of a sudden—not that there was no real sudden emergency; but it does stop; whether he failed to exercise such care as a reasonable and prudent person, the question seems to me for the Jury under all the evidence.

"It's a very close case and I'd like to feel that I could set it aside, but I don't.

"I'll sustain the verdict and overrule the motion."
(Italics supplied.)

Plaintiff relies upon the fact that the court's statement included the words: "* * * I am convinced that there—I feel there has been a miscarriage of justice." She argues that since the court was convinced that there had been a miscarriage of justice it should have set aside the verdict. We find this contention to be without merit.

It is manifest from a reading of the trial judge's remarks that he personally disagreed with the jury's verdict, but it is well settled in this jurisdiction that a trial judge cannot set aside a verdict because he would have found a different verdict if he had been a member of the jury. *Ellett* v. *Carpenter,* 173 Va. 191, 197, 3 S.E. 2d 370; *Braxton* v. *Flippo,* 183 Va. 839, 844, 33 S.E. 2d 757; *Schools* v. *Walker,* 187 Va. 619, 624, 47 S.E. 2d 418; 13 M.J., New Trials, § 31, *supra.* In the instant case, the trial judge observed that the evidence was in conflict; that it presented a jury question, and that it was sufficient to enable the jury to conclude that defendant "didn't do anything that a reasonable man wouldn't have done." It is true that the trial judge was of opinion that the case was close and that he was

inclined to set aside the verdict, but the fact remains that he did not feel that it could be set aside and he refused to do so.

In view of our holding that the questions of primary negligence and proximate cause were issues for the jury and in light of the fact that the jury has decided those issues in defendant's favor, it becomes unnecessary to discuss the cross-error relied upon, i.e., the refusal of the court to submit the issue of contributory negligence to the jury.

The judgment appealed from is

*Affirmed.*