### Richmond

ROY C. SWISHER

V.

BEULAH L. SWISHER And DANA SUE CRAUN

April 30, 1982.

Record No. 791594.

Present: All the Justices.

*Colin J. S. Thomas, Jr. (Wayt B. Timberlake, Jr.; Timberlake, Smith, Thomas & Moses*, on briefs), for appellant.

*M. Bruce Wallinger (Douglas L. Guynn; Wharton, Aldhizer & Weaver,* on brief), for appellees.

THOMPSON, J., delivered the opinion of the Court.

Beulah L. Swisher sustained personal injuries in a motor vehicle accident on May 19, 1975, while a passenger in an automobile operated by her husband, Roy C. Swisher, which collided with another automobile operated by Dana Sue Craun. The collision occurred in the intersection of Norwood Road (Secondary Highway #1410) and Robin Hood Road (Secondary Highway #1415) in Augusta County near the corporate limits of Staunton. Beulah sued both Roy and Craun, alleging that her injuries resulted from the concurring negligence of the two defendants, and she obtained a verdict and judgment against both. Roy appealed, alleging (1) that the evidence was insufficient to hold him liable; (2) that the trial court erred in permitting Craun to tender instructions covering Roy's liability to Beulah; and (3) that certain instructions improperly stated the pertinent law or were given without supporting evidence. We affirm the judgment of the trial court.

Robin Hood Road runs in a north-south direction on a relatively level grade. The Swishers were proceeding north to their residence. Norwood Road runs in a west-east direction on a downgrade. Craun was traveling downhill from west to east. No traffic lights or signs controlled the intersection. The investigating state trooper testified that he arrived at the scene at 8:58 p.m., that the intersection was "flat, blacktopped, and lighted by street lights," and that the weather was clear. He noted that Roy's car, sitting partially within the intersection, displayed a damaged front grill and bumper, while the Craun vehicle had a damaged right rear fender. The force of the collision had turned the Craun car around so that it was pointed in a westerly direction. The trooper did not take any measurements, photographs, or written statements, and did not attempt to establish the point of impact. He did recall that Craun told him that she did not see Roy's car until the impact.

Roy testified that he was traveling at 20 m.p.h. and looked before entering the intersection without perceiving any approaching vehicle. He entered the intersection, then saw Craun's car about eight paces to his left. He estimated Craun's speed at 35 m.p.h. Based on measurements which he made four years after the accident, Roy testified that at the point of impact he had pro-

ceeded 24 feet into the intersection while Craun had advanced only 15 feet. Beulah stated that she observed the Craun car only at impact, but did not recognize it immediately as a car because it moved "so fast." She testified that Roy told her that he did not see the Craun vehicle before he entered the intersection.

Craun testified that she descended the hill leading to the intersection in first gear at approximately 15 m.p.h. She never shifted from first gear. She did not completely stop at the intersection, but slowed. Craun admitted that she never looked for approaching cars, but relied on the advice of her mother, who was a passenger in the front seat. Craun saw Roy only when the cars collided.

Louise James, Craun's mother, corroborated Craun's testimony. She further stated that she sat in the front passenger's seat and looked to the right as their car approached the intersection. She could see clearly to the end of the street and did not observe an approaching vehicle. She first noticed Roy one second before the collision.

### 1. *Sufficiency of Evidence.*

Roy argues that there was no evidence to establish any negligence on his part since he had the right-of-way at the intersection, and it was Craun's duty to yield to him. We disagree with his assertion. No evidence establishes which vehicle actually entered the intersection first, but the officer's testimony revealed that the Craun vehicle sustained damage to the right rear and Roy's vehicle to the front and grill. From this, a jury might well conclude that Craun had entered the intersection first, had almost crossed it, when Roy, proceeding north, struck her in the northbound lane. In *Farmer* v. *Marine Center, Inc.,* 206 Va. 737, 740-41, 146 S.E.2d 265, 268-69 (1966), we said:

> The mere fact that defendant's vehicle was on the right was not of itself sufficient to give it the right of way . . . . Under the statute, the driver of the vehicle on the left is required to yield the right of way to the driver of the vehicle on the right only when both vehicles approach or enter the intersection "at approximately the same time". "The phrase 'at approximately the same time' means that the determination of the question depends not upon a computation of time, but upon the determination of a fact by the jury." [Citations omitted.]

Under the evidence adduced the jury had a right to conclude that the two vehicles did not approach or enter the intersection "at approximately the same time", but instead, that plaintiff's car approached and entered it substantially first. In such a situation "neither driver had the right of way over, or was required to yield to, the other. Each was under the duty to exercise ordinary care to avoid a collision." *Pannell* v. *Fauber,* 201 Va. 380, 384, 111 S.E.2d 445.

Later, in *Reagan* v. *Reagan,* 215 Va. 222, 224, 207 S.E.2d 888, 890 (1974), we reaffirmed familiar principles in this type case:

Here the plaintiff comes before us with a jury verdict in her favor which has the approval of the trial court. In such circumstances we must view the evidence, and all reasonable inferences therefrom, in the light most favorable to her. [Citation omitted.]

All inferences which the jury might have fairly drawn from the plaintiff's evidence must be drawn in her favor; and where there are several inferences which may be drawn from the evidence, though they may differ in degree of probability, the court must adopt those most favorable to the party prevailing below. [Citation omitted.]

■ Roy had a duty to keep a proper lookout regardless of which vehicle had the right-of-way. *Sayre* v. *Shields,* 209 Va. 409, 164 S.E.2d 665 (1968). The jury could well conclude that he failed in his duty because he did not see what a reasonable lookout would have disclosed.

## II. *Participation of Codefendant.*

■ Roy strongly objected to counsel for Craun preparing and tendering to the court instructions as to the duty owed by Roy to Beulah. We see nothing improper or anomalous in this.

Trial counsel prepare and tender instructions to assist the court in delineating the issues for the jury. The court gives the instructions as its own. Jurors never know the instructions' origin. Our sole responsibility in reviewing the matter is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises. *E. I. DuPont* v. *Snead's Amr.,* 124 Va. 177, 97 S.E. 812 (1919).

Further, counsel for the codefendant does not try his case in isolation, but is concerned with what occurs between another codefendant and the plaintiff. Counsel for Craun had a perfect right to proffer any defense which showed that Craun was not liable at all, or, if liable, that she shared liability jointly with another codefendant. We know of nothing in our adversary system which requires that each defendant act as if his liability had been severed from that of a codefendant. *See Monday* v. *Oliver and Doe,* 215 Va. 748, 214 S.E.2d 142 (1975).*

### III. *Instructions.*

■ Roy complains that the court improperly granted certain instructions. We hold that each instruction was in proper form and supported by sufficient evidence.

For the foregoing reasons, the judgment of the trial court will be

*Affirmed.*

---

* Roy challenged Craun's right to offer instructions as to Roy's potential liability to Beulah, citing *Walton, Witten & Graham* v. *Miller,* 109 Va. 210, 63 S.E. 458 (1909). This precedent became obsolete when Code § 5779 was added to the Code of 1919, (present Code § 8.01-34), providing contribution among negligent tortfeasors.