# Richmond.

## WILLIS AND OTHERS v. WRENN'S EXECUTRIX.

March 19, 1925.

Absent, West, J.

Case submitted for decision before Judge Kelly qualified.

1. LANDLORD AND TENANT—*Repairs—Duty of Tenant Independent of Covenant.*—Independent of any covenant or agreement to repair, a tenant is not bound to make any repairs not caused by his fault or negligence.

2. LANDLORD AND TENANT—*Repairs—Covenant to Repair—Duty to Rebuild or Reconstruct—Common Law.*—At common law a covenant to repair or to leave the premises in good repair bound the tenant to rebuild the buildings, though destroyed by fire or other accident, and without fault or negligence on his part, and if he desired to relieve himself from such liability, he had to do so by excepting such liability from the operation of his covenant.

3. LANDLORD AND TENANT—*Repairs—Covenant to Repair—Duty to Rebuild or Reconstruct—Statutory Rule.*—But under section 5180 of the Code of 1919, the common law rule is reversed, and no contract or promise by a lessee to leave the premises in good repair binds him to rebuild, unless there be other words showing an intent that he shall be so bound. The statute is a complete reversal and repeal of the common law on the subject. Under the statute a covenant to leave in good repair is not a covenant to rebuild, and he who would hold a tenant to the obligation to rebuild must produce a contract containing "other words showing it to be the intent of the parties that he should be so bound."

4. LANDLORD AND TENANT—*Duty of Tenant to Repair—Rebuilding—Case at Bar.*—In the instant case a tenant contracted to leave the premises in good repair and not to call upon the landlord for any repairs during the lease; and to pay himself for all necessary and proper repairs.

   *Held:* That the tenant was not bound to replace or rebuild, but only to pay for necessary and proper repairs.

5. LANDLORD AND TENANT—*Duty of Tenant to Repair—Repairs or Replacement—Case at Bar.*—In the instant case the tenant was not bound by

13

his contract to replace or reconstruct, but only to pay for necessary and proper repairs. During the lease a parapet, which ran up about two and a half to three feet above the roof of the premises fronting the street, fell by reason of a hidden structural defect unknown to the tenant and probably to the landlord. The parapet was not necessary to the preservation or protection of any part of the building.

*Held:* That work done in replacing the parapet was not a necessary or proper repair within the meaning of the contract, but was a replacement or rebuilding of the parapet.

6. LANDLORD AND TENANT—*Duty of Tenant to Repair—Repairs or Replacement—Case at Bar.*—In order to bind a tenant to replace or reconstruct a parapet on the front of the leased building, which fell from a hidden structural defect unknown to the tenant, his covenant ought to be special and express, and so clear as to leave no doubt that he intended to take this duty and charge upon himself. Nothing should be left to vague inferences or doubtful construction.

Error to a judgment of the Law and Chancery Court of the city of Norfolk, in a proceeding by motion for a judgment for money. Judgment for defendant. Plaintiffs assign error.

*Affirmed.*

The opinion states the case.

*Jas. G. Martin & Bro.*, for the plaintiffs in error.

*Earl W. White* and *H. M. Woodward*, for the defendant in error.

BURKS, J., delivered the opinion of the court.

The plaintiffs in error were plaintiffs in the trial court. On February 1, 1916, the plaintiffs leased to the defendant's testator a large brick building in the city of Norfolk for a term of seven years. The contract was in writing, and contained the following covenants on the part of the lessee: "That he will pay the rent and in-

surance premiums on the said building and improvements in manner as hereinbefore stipulated; that he will not assign without leave; that he will leave the premises in good repair; and that the lessors may reenter for default of sixty days in the payment of rent or for breach of covenants.    And the said party of the second part covenants that he will not call upon the said parties of the first part for any repairs during the said lease, but will himself pay for all and any repairs that may be necessary or proper during the same."

The building was of brick, four stories high, forty-eight feet six inches front, and one hundred and fifty-six feet deep.    The roof was flat, and on the front there was a wall or parapet extending from two and a half to three feet above the roof.    This parapet was a brick wall thirteen inches thick, and on the inside of it next to the roof there had been put into the wall, about eighteen inches from the top thereof, at the time of construction in 1900, a wooden beam or joist two inches by eight inches and extending along the whole of the front wall. This beam was visible from the roof, but could only be removed or replaced by removing the bricks above it. The edge of this beam was exposed to the weather, but had not been painted and consequently rotted and the wall above it fell.    There was some controversy over the question whether or not the placing of this beam in the wall was faulty construction in the first instance, but the evidence on the subject was conflicting, and the verdict of the jury in favor of the defendant is conclusive that it was faulty construction.

When the wall fell, the plaintiffs called on the tenant to replace it, which he refused to do.    Thereupon the plaintiffs replaced the wall at a cost of $420.42, and brought this action against the tenant to recover that

amount.    There was a verdict and judgment for the defendant, and the plaintiffs assign error.

The part of the wall which fell was of no use to the tenant.    He had no knowledge or information of the defective construction, and the existence and condition of the wooden beam was only discoverable by going upon the roof of this four story building.

The crucial question in the case was, was the rehabilitation of the wall a repair, or a replacement, or rebuilding, of the wall.    The parties sought, in various ways, to present this question, but especially by the instructions which are copied in the margin.*    While there is

---

*INSTRUCTIONS TENDERED BY THE PLAINTIFFS AND REFUSED.

"The court instructs the jury that it is the duty of the court, that is the judge, to construe written instruments, and so construing the written lease dated February 1, 1916, the court instructs the jury that if they believe from the evidence that the defendant executed said lease, they must find for the plaintiff.

"The court instructs the jury that if they believe from the evidence that the work in question was not caused by original bad construction, but by lapse of time and wear and tear and exposure; or that by reasonable care the tenant could have prevented the cornice wall falling; they should find for the plaintiff."

INSTRUCTIONS GIVEN FOR THE DEFENDANT.

"The court instructs the jury that the covenant in the lease reading 'and the said party of the second part covenants that he will not call upon the said parties of the first part for any repairs during the said lease, but will himself pay for any and all repairs that may be necessary or proper during the same' contemplates and covers only such repairs as would usually become necessary by reason of ordinary wear and tear, and does not cover rebuilding or replacement of the building in whole, or any part thereof, that might become necessary by reason of defects in the original construction.    Therefore, if you believe from the evidence that the falling wall was due to defective construction without fault or negligence on the part of the tenant and not the ordinary wear and tear, then you must find for the defendant."

INSTRUCTIONS GIVEN FOR THE PLAINTIFFS.

"The court instructs the jury, that as to the question of original bad construction, the burden is upon the defendant to prove such original defect."

"The court instructs the jury that unless they believe from the evidence that the damage was caused by original defective construction, that is that the building was not originally constructed with reasonable skill and firmness, and not by ordinary wear and tear, they should find for the plaintiffs."

some adverse criticism of the language of the instruction given for the defendant, we deem it unnecessary to enter upon a discussion of it as the ultimate result must depend upon the proper answer to what is said above to be the crucial question in the case, and the case should be ended here and now, without further litigation.

[1, 2] Independent of any covenant or agreement to repair a tenant is not bound to make any repairs not caused by his fault or negligence. But the common law rule was firmly established that a covenant to repair or to leave the premises in good repair, bound the tenant to rebuild the buildings, though destroyed by fire or other accident, and without fault or negligence on his part, and that if he desired to relieve himself from such liability he had to do so by excepting such liability from the operation of his covenant. *Ross* v. *Overton*, 3 Call (7 Va.) 309, 2 Am. Dec. 552; *Vaughan* v. *Mayo Milling Co.*, 127 Va. 154, 102 S. E. 597, and cases cited. The rule is well stated and the authorities therefor cited in 16 R. C. L. 1088, section 605:

"It is the well settled common law rule that a tenant's general covenant to repair the demised premises binds him under all circumstances, even though the injury proceeds from an act of God, from the elements, or from the act of a stranger, and if he desires to relieve himself from liability for injuries resulting from any of the causes above enumerated, or from any other cause whatever, he must take care to except them from the operations of his covenant. Under this rule, if the tenant enters into an expressed and unconditional contract to repair and keep in repair, or to surrender the premises in good repair, he is liable for the destruction of the buildings not rebuilt by him, though the destruction may have occurred by fire or other accident, or by the act of enemies, and without fault on his part."

Even while the common law doctrine was in force in this State, it was deemed a harsh, if not unreasonable, rule, and the courts refused to extend it beyond what was required by the language used. In *Maggort* v. *Hansbarger*, 8 Leigh (35 Va.) 532, 537, it is said that "*Ross* v. *Overton* was considered at the time a doubtful case. * * * There are strong considerations that would render me averse to extending the doctrine of the tenant's liability in any degree beyond the decided cases. Such a risk is scarcely ever contemplated by either party, and the tenant receives no premium for the insurance. Were he asked, at the time of making a contract and giving a fair rent for the property, 'do you mean, if it is destroyed by fire or tempest, to rebuild or repair it?' he would be startled at the bare question; and the landlord himself, to the same enquiry, would unquestionably answer that he expected nothing so unreasonable. To bind him to something so unequal, and so contrary to the obligations imposed upon him by the common law, I think his covenant ought to be special and express, and so clear as to leave no doubt that he intended to take this duty or charge upon himself. Nothing should be left to vague inferences or doubtful construction."

In that case the defendant had leased a grist mill, a saw mill and a carding machine, with their appurtenances, for a term of four years for which he agreed to pay a certain rent, and, at the expiration of the term, "to return the said property with all its appurtenances." There was no covenant to repair or return in good order. The grist mill, saw mill and carding machine were destroyed by fire without fault or negligence of the tenant, and it was held that the tenant was not bound to rebuild.

[3] The common law rule continued in force until the revision in 1849, when the revisors suggested and the legislature adopted so much of our present statute (Code section 5180) as applies to covenants to repair by a tenant.   The statute adopted was as follows:   "No covenant or promise by a lessee that he will leave the premises in good repair, shall have the effect, if the buildings are destroyed by fire or otherwise without fault or negligence on his part, of binding him to erect such buildings again, unless there be other words showing it to be the intent of the parties that he should be so bound."   Code 1849, chapter 117, section 19.

It will be observed that under the common law an express covenant to leave the premises in good repair bound the tenant to rebuild unless the tenant by some other provision of the contract or lease exempted himself from that liability, while the statute exactly reverses the situation and declares that no contract or promise by a lessee to leave the premises in good repair shall bind him to rebuild unless there be other words showing an intent to be so bound.   The statute is a complete reversal and repeal of the common law on the subject.   Under the statute a covenant to leave in good repair is not a covenant to rebuild, and he who would hold a tenant to the obligation to rebuild must produce a contract containing "other words showing it to be the intent of the parties that he should be so bound."

[4] Under the contract in the instant case the tenant contracted to leave the premises in good repair, and the "other words" relied on are "and the said party of the second part covenants that he will not call upon the said parties of the first part for any repairs during the said lease, but will himself pay for any and all repairs that may be necessary or proper during the same."

It seems manifest from reading the contract in connection with the statute that the tenant was not bound to replace or rebuild, but only to pay for "any and all repairs that may be necessary or proper." So that we are brought back to the enquiry whether what was done to the wall to restore it was a repair, or a replacement, or reconstruction, within the meaning of the contract.

[5, 6] The wall which fell was in no way necessary to the convenient use and enjoyment of the property. It was not necessary for the protection or preservation of any part of the building. It was a mere parapet run up above the roof, and it does not appear that it afforded any protection from fire, or served any useful purpose. If never restored it does not appear how, if at all, the building would be injured. It was of no value to the tenant. The defect was hidden and unknown to the tenant and the verdict of the jury shows that it was structural. It was conceded on the oral argument that if the whole front wall had fallen the tenant could not have been compelled to rebuild, but it was said that what happened was "a mere nick" on a wall of that size and stands on a different footing. We are unable to take this view of it. In the present condition of fire fighting apparatus in our cities and towns it is rather exceptional when a building is totally destroyed, and we cannot enter upon a discussion of how much destruction is necessary to require repairs and how much to require reconstruction or replacement. Very large replacements and reconstructions are often spoken of as repairs, but would not come within the meaning of a lease requiring the tenant to make all necessary and proper repairs. Confining ourselves to the facts of the instant case, we are of opinion that the work done on the wall was not a necessary or proper repair within the

meaning of the contract of the parties. It was a replacement or rebuilding of the wall, which fell from a hidden structural defect, unknown to the tenant and probably to the landlord, which was not within the contemplation of the parties when they entered into the contract of lease. If, as said in *Maggort* v. *Hansbarger, supra,* when the contract was entered into, the question had been put to the parties, do you understand that if any part of the wall of the building falls from a hidden structural defect it will be the duty of the tenant to replace it at his expense, we cannot doubt what the answer would have been. It would have shocked the tenant to have supposed such a thing possible, and even the landlord would have been compelled to have answered no, I did not intend that. If the landlord had so intended, the "other words" should have been more explicit to manifest that intention. The work done on the wall was in the nature of replacement or reconstruction rather than repairs, and the cause of its fall was a matter which cannot be reasonably said to have been in the contemplation of the parties when the contract was entered into, and is not so clearly embraced by the language of the contract as to require us to hold that it is covered by it. In order to bind the tenant in a case of this kind, "his covenant ought to be special and express, and so clear as to leave no doubt that he intended to take this duty and charge upon himself. Nothing should be left to vague inferences or doubtful construction."

In *Ducker* v. *Del Genovese,* 93 App. Div. 577, 87 N. Y. Supp. at page 890, it is said: "A covenant to repair and maintain buildings is not a covenant to reconstruct buildings destroyed through no fault of the tenant, unless the language is such as to absolutely compel this

conclusion."    See also *Street* v. *Central Brewing Co.,* 101 App. Div. 3, 91 N. Y. Supp. 547.

We find no error in the judgment of the trial court and it is therefore affirmed.

*Affirmed.*