Staunton

D. M. Lackey v. R. Garnett Brooks, Administrator of the Estate
of James Edward Thomas, Deceased.

September 11, 1963.

Record No. 5610.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*Michael W. Moncure, III* (*Moncure & Cabell,* on brief), for the
plaintiff in error.

*F. Byron Parker (Stuart L. Williams; Parker & Lane,* on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

█ D. M. Lackey filed a motion for judgment against R. Garnett Brooks, administrator of the estate of James Edward Thomas, deceased, to recover damages to a tractor and trailer owned by the plaintiff which were damaged in a collision with another vehicle alleged to have been negligently operated by the decedent on December 7, 1958, on Route 301 in Caroline county.

The defendant administrator filed a general denial and motion to dismiss, alleging that at the time of the collision both vehicles involved were owned by the plaintiff,. Lackey, and by him leased in writing to Golden Gift, Incorporated; that at the time of the accident the deceased, Thomas, was the agent and employee of Golden Gift; and that by the terms of the lease it was stipulated and agreed that Golden Gift and its agents and employees were relieved of all liability for damages to the plaintiff's tractor and trailer.

Upon consideration of the pleadings and the written lease therewith filed, the lower court held that by the terms of the lease the plaintiff had convenanted "not to sue the lessee or its agents, servants and employees," and that, therefore, the present suit could not be maintained. To review the judgment of dismissal we granted the plaintiff a writ of error.

The sole question involved on the appeal is whether the lower court correctly held that the provisions in the lease, upon which the defendant relied, were a bar to the present action.

By the terms of the lease Lackey leased to Golden Gift, Incorporated, a number of motor vehicles, including those involved in the accident, for a term of three years from June 23, 1958. The vehicles were to be delivered to the lessee which was to operate them, furnish its own drivers and helpers, and the fuel and motor oil used by the vehicles. The lessor was to keep the vehicles duly licensed,. registered, and in good repair and efficient operating condition throughout the term. The lessor was to be compensated according to the mileage traveled by each vehicle during the term.

The lease carried this article, the interpretation of which is the focus of the present controversy:

"6. Lessor shall carry at *its* expense Public Liability and Property Damage insurance in limits of not less than $100,000 / $300,000 / $50,000, and such insurance shall provide for Lessee to be co-insured thereunder. Lessee shall not be liable for any damage to, or loss or destruction of, any motor vehicle, tractor or trailer, or its tires, or equipment, whether caused by fire, theft, collision, upset, windstorm, explosion, or any other cause whatsoever, whether the fault of Lessee or its agents, servants, or employees having caused or contributed to such damage, loss or destruction. Lessor, to protect *itself* against any of the risks aforesaid, shall, at *its* expense, carry such insurance as may be necessary to cover the risks aforesaid, naming the Lessee as co-insured so that no right *or* subrogation shall arise in favor of the insurer as against the Lessee, and the Lessor hereby agrees to indemnify and save harmless the Lessee against any loss, damages, costs, or claims arising from any action brought by any such insurer against the Lessee. * * *"

As required by Article 6 of the lease the lessor, Lackey, purchased the public liability and property damage insurance coverage, in which he and the lessee were named as the "joint insured." The record is silent as to whether the lessor took out the required collision insurance to protect himself against any loss or damage which might be done to any of the leased motor vehicles during the term. It seems to be agreed that Thomas was driving the leased vehicle involved in the collision as the servant and agent of Golden Gift.

The position of the plaintiff appellant is that the provisions in Article 6 of the lease constitute an indemnity agreement whereby the lessor, Lackey, agreed to indemnify and save harmless the lessee, Golden Gift, but not any of the latter's servants or employees, from any damage to or loss of the leased vehicles during the term of the lease.

The position of the defendant administrator is that the lower court was right in holding that the provisions in Article 6 of the lease constitute a covenant by the lessor not to sue the lessee, or any of its servants or employees, for any damage to the leased vehicles, and that such provisions were a bar to the present action against the decedent, Thomas, an employee of the lessee.

We do not agree with the position of the plaintiff appellant that the stipulation is an indemnity agreement whereby the lessor agreed to indemnify and save harmless the lessee, Golden Gift, from any claim for damage to or loss of the leased vehicles. The indemnification

provision is within a narrow scope. It will be observed that the lessor agreed to carry the necessary insurance to protect himself against loss of or damage to the leased vehicles during the term and that the lessee would be named in such policy as a "co-insured so that no right of subrogation shall arise in favor of the *insurer*." (Italics supplied.) The lessor further agreed to "indemnify and save harmless the Lessee against any loss, damages, costs, or claims arising from any action brought by any *such insurer* against the Lessee." (Italics supplied.) The obvious purpose of the provision was to protect the lessee against any subrogation claim which the *insurer*, having paid a collision or loss damage claim to the lessor, might seek to assert against the lessee. No such subrogation claim is here involved. Nor is there any agreement by the lessor to indemnify the lessee against any other claim.

We agree with the lower court that the provisions in Article 6, read as a whole, are "in the nature of a covenant not to sue." It is stipulated that the "Lessee shall not be liable for any damage to * * * any motor vehicle, tractor or trailer, * * * whether caused by * * * collision, upset, * * * or any other cause whatsoever, whether the fault of Lessee or its agents, servants, or employees having caused or contributed to such ·damage, loss or destruction." While this provision partakes of the nature of a release, there is no claim that such was its purpose and effect. At the time the lease was entered into there was in existence no claim to be released. The provision clearly indicates the lessor's intention to refrain from enforcing against the lessee any claims for damages to the leased vehicles which might subsequently occur. This is emphasized by the further provision that the lessor, for his protection, will carry insurance with no right of subrogation in favor of the insurer against the lessee. Such provisions, in effect, constitute a covenant not to sue. See *Wilder* v. *Pennsylvania Railroad Co.*, 245 N. Y. 36, 156 N. E. 88, 89, 52 A. L. R. 188; *Doster* v. *C. V. Nalley, Inc.*, 95 Ga. App. 862, 99 S. E. 2d 432, 434; 45 Am. Jur., Release, § 31, pp. 695, 696; 76 C. J. S., Release, § 3, p. 630.

But we do not agree with the lower court that by the terms of these provisions the lessor covenanted not to sue the agents, servants, or employees of the lessee. The benefit of the covenant is expressly limited to the lessee alone. The stipulation is that the *"Lessee shall not be liable"* for any damage to the leased vehicles, whether caused by the fault of the lessee, or its agents, servants, or employees. The

exemption from liability does not include the agents, servants, or employees of the lessee. The provision requiring the lessor to protect himself by additional insurance and the indemnification agreement against subrogation claims which the insurer may have are likewise limited to the lessee.

The covenant of the lessor not to sue the lessee is, of course, a bar to an action against the covenantee, the lessee. 16 Mich. Jur., Release, § 3, p. 55; 76 C. J. S., Release, § 44, p. 675; 45 Am. Jur., Release, § 3, p. 676. But the critical question here is whether such a covenant is likewise a bar to an action against the employee of the covenantee, the lessee. We hold that it is not.

In this State we are committed to the view that the release of one joint tort-feasor releases the others jointly liable for the same wrong or injury. *First & Merchants Nat. Bank* v. *Bank of Waverly*, 170 Va. 496, 502, 197 S. E. 462, 464, 116 A. L. R. 1156. Moreover, while a master and servant are not technically joint tort-feasors with respect to a tortious act committed by the servant, it is likewise settled in this jurisdiction that a release of the master for such tortious act of the servant operates as a release of the servant for such act. *McLaughlin* v. *Siegel*, 166 Va. 374, 377, 185 S. E. 873, 874; *Norfolk Union Bus Terminal* v. *Sheldon*, 188 Va. 288, 296, 49 S. E. 2d 338, 341; 35 Am. Jur., Master and Servant, § 535, p. 963; 76 C. J. S., Release, § 50-b, p. 689.

But, as we pointed out in *Shortt* v. *Hudson Supply & Equipment Co.*, 191 Va. 306, 310, 60 S. E. 2d 900, 903,* "By the great weight of authority a covenant not to sue one joint tort-feasor, as distinguished from a release, does not operate to discharge the covenantor's claim against other joint tort-feasors. Restatement of the Law, Torts, Vol. 4, § 885, pp. 460-462; Williston on Contracts, Rev. Ed., Vol. 2, § 338A, p. 994 *ff*; 45 Am. Jur., Release, § 4, pp. 676, 677." See also, Annotation, 73 A.L.R. 2d, p. 418.

Upon the same principle a bare covenant not to sue the master for the tortious act of the servant is not a bar to an action against the servant for the latter's tortious conduct. 35 Am. Jur., Master and Servant, § 535, p. 964.

For these reasons we are of opinion that the lower court erred in holding that the provisions in Article 6 of the lease constitute a bar to the present action by the plaintiff lessor, Lackey, against the estate

---

*In this case we held that where the plaintiff had effected an accord and satisfaction with one joint tort-feasor and convenanted not to sue it, his claim against others responsible for his injuries was discharged.

of the deceased employee of the lessee, Golden Gift, Incorporated.

Accordingly, the judgment is reversed and the case remanded to the lower court for a new trial in accordance with the principles here stated.

*Reversed and remanded.*