NATIONAL MOTELS, INC., Appellant,

v.

HOWARD JOHNSON, INC. OF WASHINGTON, Appellee.

NATIONAL MOTELS, INC., Appellee,

v.

HUNGERFORD, INCORPORATED, Appellant.

NATIONAL MOTELS, INC., Appellee,

v.

HOWARD JOHNSON, INC. OF WASHINGTON, Appellant.

Nos. 10593–10595.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 2, 1966.

Decided Jan. 27, 1967.

John A. Beck, Washington, D. C., and C. Hobson Goddin, Richmond, Va., (Wicker, Goddin & Duling, Richmond, Va., and Frost & Towers, Washington, D. C., on brief), for Hungerford, Inc.

R. Harvey Chappell, Jr., Richmond, Va., (Alexander Wellford and Christian, Barton, Parker, Epps & Brent, Richmond, Va., on brief), for National Motels, Inc.

Aubrey R. Bowles, Jr., Richmond, Va., (H. Armistead Boyd, and Bowles & Boyd, Richmond, Va., on brief), for Howard Johnson, Inc. of Washington.

Before HAYNSWORTH, Chief Judge, and J. SPENCER BELL and WINTER, Circuit Judges.

J. SPENCER BELL, Circuit Judge:

These appeals are from a judgment of the district court sitting without a jury. National Motels, Inc., filed suit alleging that it operated a motel business in Chesterfield County, Virginia, under the franchise name of "Howard Johnson Motor Lodge" and that the defendant Howard Johnson leased from it a building adjoining the motel for the operation of a "Howard Johnson Restaurant." The plaintiff further alleged that by reason of the negligence of the two defendants in the installation, operation, maintenance, and servicing of the heating equipment in the restaurant an explosion occurred resulting in extensive damage to the restaurant building and loss of rents to the plaintiff both from its restaurant and from its motel business. It alleged that the heating equipment was installed and serviced by defendant Hungerford and that its negligence, together with the negligence of Howard Johnson in its operation of the equipment, caused the explosion. The plaintiff also alleged that Howard Johnson had by its lease agreed to hold the plaintiff harmless from all costs and damages caused by its negligence. Howard Johnson, in its answer, in addition to denying negligence asserted that its lease exculpated it from liability to the plaintiff.

The court found that both of the defendants were negligent and that their joint negligence was the proximate cause of the plaintiff's damages, which consisted of three elements: (1) loss of motel rents, (2) loss of restaurant rents, and (3) costs of repair to the restaurant building. The court gave judgment for the entire amount of the damages against the defendant Hungerford. Against the defendant Howard Johnson it gave judgment only for the loss of motel rents, holding that Howard Johnson's lease with the plaintiff exonerated it from the repayment of the costs to the plaintiff

of repairing the restaurant building and loss of restaurant rents but not from the plaintiff's loss of motel rentals due to the closure of the restaurant and its unsightly appearance following the explosion. All three parties appealed, raising issues of liability, damages, and exculpation. The defendant Howard Johnson does not appeal from the court's finding that it was negligent.

The district court's opinion carefully analyzes the evidence and finds the facts. Our own review of the record convinces us that the court was not clearly erroneous in its finding that both defendants were jointly and concurrently negligent and that their negligence was the proximate cause of the plaintiff's damages. Furthermore we think the district court's conclusion that the loss of motel rents was recoverable under the Virginia law was correct. Cf. Barnette v. Dickens, 205 Va. 12, 135 S.E.2d 109 (1964); United Constr. Workers v. Laburnum Constr. Corp., 194 Va. 872, 75 S.E.2d 694 (1953); E. I. DuPont de Nemours & Co. v. Universal Moulded Prods. Corp., 191 Va. 525, 62 S.E.2d 233 (1950).

We now turn to the third issue raised on this appeal, i. e., the court's determination that Howard Johnson was partially exculpated under the terms of its lease with the plaintiff.[1] This issue first

---

1. The pertinent provisions of the lease are:

"EIGHTH: The LESSEE will, at its own cost and expense, make all repairs and renewals of whatever nature necessary to keep the interior of the premises and fixtures therein in good condition, including doors and windows, and not excluding anything not herein specified; and will make good any damage done to the building or any part thereof, caused by the moving of furniture, fixtures or mechandise into or from the said premises; and at the end or other expiration of the term of this lease will deliver up the said premises in good condition other than that which may occur from ordinary wear and tear and damage by fire and other casualty. The LESSOR shall make all structural repairs and shall maintain and make all repairs to the foundation, walls, roof and exterior of the building, including exterior painting. In the event that any repairs for which the LESSEE may be liable were necessitated by faulty construction of the premises, the LESSEE in such event may be subrogated to the rights that the LESSOR might have against the contractor and his guarantors, and may sue either of them in its own name for its own uses and benefits, or in the name of the LESSOR all at the LESSEE's option.

\* \* \* \* \*

"TENTH: From the date erection of a new building herein provided for is begun, and throughout the residue of the term hereof, the LESSOR shall procure, carry and pay for insurance, including 'extended coverage' so-called, insuring the building from time to time upon the demised premises, against loss or damage by fire and the elements, for at least eighty per cent (80%) of the full value thereof; the policies to contain eighty per cent (80%) co-insurance clauses, in responsible insurance companies authorized to do business in the state where the demised premises are located.

"Whenever and as often as any such damage or loss shall occur, the entire amount payable under all of said policies shall constitute a fund to be applied first to the cost of restoring the buildings as hereinafter provided; and the LESSOR agrees to apply the same first to the cost of such restoration before using any portion thereof for any other purpose.

"Each of such insurance policies shall be in form reasonably satisfactory to the LESSEE, and shall carry an endorsement that before changing or cancelling any policy the insurance company issuing the same shall give the LESSEE at least ten (10) days' prior written notice. Duplicate originals or certificates of all such insurance policies shall be delivered to the LESSEE, the first policies to be issued hereunder within twenty (20) days after the erection of said new building is begun, and all renewals thereof at least ten (10) days prior to the expiration of the then existing policies.

"ELEVENTH: If at any time during the term hereof the building upon the demised premises shall be damaged or destroyed by fire or the elements, or other cause, said building shall be promptly repaired or rebuilt and restored by the LESSOR to a condition as good as the same was in immediately prior to such damage or destruction, at the LES-

arose upon a motion by the defendant Howard Johnson for summary judgment, at which time the court assumed negligence and based its judgment upon the pleadings and the terms of the lease. Subsequently the court reconsidered the matter and withdrew its order in favor of Howard Johnson until it should hear the case on the merits. In its final judgment the court revised its original opinion, holding Howard Johnson to be partially but not entirely exonerated by the terms of the lease. We think the court's basic error occurred in the original consideration wherein it reached the conclusion that it was the intent of the parties as expressed in the lease that the defendant was to be exonerated from damages resulting from its own negligence. This determination seems to have been based in part upon the premise that because the statutory law of Virginia[2] would not have required the defendant to replace the building had it been destroyed through no fault of his, the lease provisions would under any other construction be unnecessary. Thus the court said:

"In view of this section it is doubtful that the provisions in the lease per-

SOR's risk and expense, and in accordance with all laws, regulations and ordinances of all governmental authorities having jurisdiction, and from the date of such damage or destruction, and until said building shall have been completely restored as aforesaid, the fixed rent, if any, hereunder shall abate, either entirely or proportionately as the case may require, in accordance with the amount and value of all space which shall thereby be rendered untenantable; EXCEPT THAT if said building shall be substantially or totally destroyed during the last year of the term hereof (and if the term has been extended then this provision shall apply only to the last year of the latest extension of the term), either the LESSOR or the LESSEE may terminate this lease, as of the date of such destruction, by written notice to the other given within thirty (30) days after such destruction, unless within thirty (30) days after receipt by the LESSEE of any such notice from the LESSOR, the LESSEE shall give notice of its intention to extend the term of this lease in accordance with any option or right so to do which the LESSEE may have, in which event the lease shall not terminate notwithstanding any notice of termination which may have been previously given.
 \* \* \* \* \*
"TWENTY–THIRD: The LESSEE covenants that it will, at all times during the term of this lease, protect, indemnify and save harmless the LESSOR from and against any and all loss, damage, or liability incurred by any act or neglect of the LESSEE, or any of its agents, servants or employees, in, on or about the demised premises; and that it will at all times, at its own cost, and for the benefit of the LESSOR, protect the LESSOR with public liability insur-

ance, issued in the name of the LESSEE and the LESSOR, as their interest may appear; and in such company and in such form as may be reasonably satisfactory to the LESSOR, in amounts of not less than Fifty Thousand Dollars ($50,000) in case of damage or injury to one person, nor less than One Hundred Thousand Dollars ($100,000) in case of damage or injury to more than one person; and that it will within thirty (30) days from the date of the beginning of the term of this lease, deposit with LESSOR a certificate showing such insurance to be then in force; and that it will keep such insurance in full force and effect during the term of this lease."

2. Code of Virginia 1950, § 55–226:
"Buildings destroyed or lessee deprived of possession; covenant to pay rent or repair; reduction of rent.— No covenant or promise by a lessee to pay the rent, or that he will keep or leave the premises in good repair, shall have the effect, if the buildings thereon be destroyed by fire or otherwise, in whole or in part, without fault or negligence on his part, or if he be deprived of the possession of the premises by the public enemy, of binding him to make such payment or repair or erect such buildings again, unless there be other words showing it to be the intent of the parties that he should be so bound. But in case of such destruction there shall be a reasonable reduction of the rent for such time as may elapse until there be again upon the premises buildings of as much value to the tenant for his purposes as what may have been so destroyed; and, in case of such deprivation of possession, a like reduction until possession of the premises be restored to him."

tained only to the non-negligent casualties. The provisions were not needed for that purpose.

"The Court is of the opinion that the parties intended to provide in the lease that the tenant would not be liable for the negligent destruction of the buildings."

 We cannot agree that the Virginia statutory provision calls for the district court's construction of the lease provision. There seems to us to be a much more plausible explanation of the meaning and purpose of paragraph 11. The provision forced the landlord to rebuild the destroyed building promptly except during the last year of the lease and, by its requirement that the lessor secure insurance, made available a fund of ready cash to finance the rebuilding. The statutory provision relied upon by the district court does not impose upon the landlord any positive duty to rebuild,[3] and we find nothing in Virginia statutory or case law which indicates such a legal duty exists absent a contractual obligation. Indeed, indications are to the contrary. In Luedtke v. Phillips, 190 Va. 207, 56 S.E.2d 80, 82 (1949), the Virginia Supreme Court of Appeals said: "[A] lessor is under no implied covenant to repair or keep in repair the demised premises." Thus, the provision afforded protection for the long-term lessee who apparently did not want to risk loss of effective use of the premises in case a fire occurred during the term.

Another paragraph of the lease supports our conclusion that paragraph 11 was not intended to exculpate Howard Johnson from liability for damages resulting from its own negligence. Under paragraph 23, Howard Johnson agreed to

"protect, indemnify and save harmless the Lessor from and against *any and all loss, damage, or liability* incurred by any act or neglect of the Lessee, or any of its agents, servants or employees, in, on or about the demised premises; and that it will at all times, at its own cost, and for the benefit of the Lessor, protect the Lessor with public liability insurance, issued in the name of the Lessee and the Lessor, as their interest may appear * * * " [Emphasis added.]

Howard Johnson contends that the first clause of the provision is limited by the second, which follows the semicolon, so that the provision when read as a whole means only that the lessor will be protected from liability to *third persons* because of the lessee's negligence. We cannot accept so restrictive an interpretation, for to do so renders mere surplusage the words "loss" and "damage," which are used conjunctively with the word "liability" to describe the types of injury from which the lessor will be protected.

 It is apparently not against the public policy of Virginia for one to contract against his own negligence in some situations. Lackey v. Brooks, 204 Va. 428, 132 S.E.2d 461 (1963). But see Johnson's Adm'x v. Richmond & D. R. R., 86 Va. 975, 11 S.E. 829 (1890). But neither is there a strong policy supporting such agreements to the extent that they should be read into a contract which shows no ambiguity on its face.[4] Both National Motels and Howard Johnson have the capacity and the experience to say what they mean, and they could easily have drafted their contract to so provide if they had intended for Howard

---

3. The purpose of section 55–226 was to abrogate the harsh common-law rule which placed liability for all loss or damage to the leased premises on the lessee, regardless of fault. See Willis v. Wrenn's Ex'x, 141 Va. 385, 127 S.E. 312 (1925).

4. "The cases vary widely as to the power of a purely private contractor to stipulate by contract against liability for negligence. All the cases seem to agree that such stipulations are not favored and are always to be strictly construed." Fairfax Gas & Supply Co. v. Hadary, 151 F. 2d 939, 940 (4 Cir. 1945).

Johnson to be exonerated from the consequences of its own negligence. In Lackey v. Brooks, supra, this was done, with the lease providing:

"6. Lessor shall carry at *its* expense Public Liability and Property Damage insurance in limits of not less than $100,000/$300,000/$50,000, and such insurance shall provide for Lessee to be co-insured thereunder. Lessee shall not be liable for any damage to, or loss or destruction of, any motor vehicle, tractor or trailer, or its tires, or equipment, whether caused by fire, theft, collision, upset, windstorm, explosion, or any other cause whatsoever, whether the fault of Lessee or its agents, servants, or employees having caused or contributed to such damage, loss or destruction. Lessor, to protect *itself* against any of the risks aforesaid, shall, at *its* expense, carry such insurance as may be necessary to cover the risks aforesaid, naming the Lessee as co-insured so that no right *or* subrogation shall arise in favor of the insurer as against the Lessee, and the Lessor hereby agrees to indemnify and save harmless the Lessee against any loss, damages, costs, or claims arising from any action brought by any such insurer against the Lessee. * * *" 132 S.E.2d at 463.

We do not feel inclined to rescue Howard Johnson from liability by imposing upon the provisions of the lease a highly artificial and speculative interpretation, especially in view of the fact, pointed out by the district court, that the heating system utilized a highly explosive and dangerous liquid petroleum gas. In view of that fact and of its knowledge that the equipment had not been working properly for a substantial period of time, we think Howard Johnson's action in sending a busboy with only minimal instructions to ignite the heating system approached recklessness. Judge Dobie's statement in Fairfax Gas & Supply Co. v. Hadary, 151 F.2d 939, 942 (4 Cir. 1945), another case involving negligent handling of gas governed by Virginia law, seems appropriate:

"Even then if it be the rule that a purely private contractor may by contract generally relieve itself of liability for mere negligence, such a rule, we think, should have no application to the facts of the instant case. To us, the conduct of Fairfax may certainly be called gross negligence; perhaps we may go further and state that it closely verges on, if it does not actually attain, the quality of wantonness. Our social conscience is shocked at the idea that Fairfax should be here permitted to hide behind the beneficent shield of contract. Common humanity would seem to require, contract or no contract, that Hadary should be apprised by Fairfax of what it knew was a danger, both real and imminent."

These cases are remanded for the district court to enter judgment in conformity with this opinion.

Remanded.