## CIRCUIT COURT OF THE CITY OF ROANOKE

Katherine Morrison

v.

Star City Roller
Skating Centers, Inc.

February 19, 1992

Case No. CL91000868

BY JUDGE CLIFFORD R. WECKSTEIN

In this action, the plaintiff, Katherine Morrison, seeks to recover for personal injuries she suffered in a fall at a roller skating rink operated by the defendant, Star City. Star City has filed a Plea in Bar, asserting that Ms. Morrison's claim is barred by a "waiver and release" agreement. The parties have entered into a written stipulation of facts, and the plaintiff has admitted facts in response to Requests for Admission. The parties agree that the issue to be decided is whether, under the facts as stipulated, the "waiver and release" agreement bars this action.

Ms. Morrison was injured on October 27, 1989. (For the purpose of a ruling on the Plea in Bar, the parties have stipulated, in effect, that the injuries were caused by the defendant's simple negligence.) The stipulation recites that one month earlier, on September 27, "in connection with her 1989–90 application for membership in [the United States Amateur Confederation of Roller Skating ('USAC' or 'USAC/RS')], and in consideration of a grant to the plaintiff of a right to participate in USAC sports programs and related events during the 1989–90 season," Ms. Morrison, an adult, signed the "waiver and release" document. It is stipulated that this document was executed voluntarily, without fraud or undue influence.

In part, the document recites that Ms. Morrison "Acknowledge[s] and fully understand[s] that [she will be engaging in activities that

involve risk of serious injury and economic loss which might result . . . from . . . the action, inaction, or negligence of others . . . .

The agreement provides that Ms. Morrison, "intending to be legally bound, do hereby . . . waive, release and forever discharge any and all rights and claims for damages which I may have or which may hereafter accrue to me against . . . the owner of the site where USAC/RS . . . practice sessions and competitions take place . . . for any and all damages which may be sustained and suffered by me in connection with my . . . participating in . . . USAC/RS activities or practice sessions in preparation therefore [sic]."

At the time she was injured on Star City's premises, Ms. Morrison, other members of her Harrisonburg skating club, and other skaters were participating in a practice session for a skating competition to be held on the following two days.

This competition (or "meet") had been advertised as USAC-sanctioned. The plaintiff and her fellow skaters believed, at the time of the practice session, and of the meet (in which Ms. Morrison did not participate because of her injuries), that the event was a USAC/RS competition.

However, the stipulation recites, "for reasons which are not clear, USAC had not issued a sanction for the October 1989 meet before the meet and its associated practice session were actually held. In January of 1990, USAC — prompted by USAC's receipt of entry fees collected by the defendant on USAC's behalf — issued a document formally recognizing the October meet as being a USAC sports program (a 'sanction'), after satisfying itself that USAC rules and regulations governing such meets had been followed. One of the effects of USAC's [sanction] was to activate retroactively medical insurance coverage provided through USAC which would have covered the plaintiff's injuries."

Both parties agree that valid waiver and release agreements (or covenants not to sue), appropriately drawn and applicable to the circumstances, will be enforced and will bar a claimant's right to recover. *See, e.g., National Motels, Inc. v. Howard Johnson, Inc.,* 373 F.2d 375, 379 (4th Cir. 1967) (applying Virginia law); *Chesapeake and Ohio Railway Co. v. Clifton Forge-Waynesboro Telephone Co.,* 216 Va. 858, 224 S.E.2d 317 (1976); *Lackey v. Brooks,* 204 Va. 428, 132 S.E.2d 461 (1963). Therefore, though counsel for both parties tacitly recognize the defendant's burden on its Plea in Bar, both law-

yers have focused their arguments on whether there is any reason, under Virginia law, for this Court *not* to give the "waiver and release" its apparent effect. I will follow the same tack.

To summarize Ms. Morrison's position, she attempts to avoid the apparent preclusive effect of the "waiver and release" agreement by arguing that under established law, the agreement should not be enforced, or is ineffective to release defendants from their own negligence (or because the risk of falling on a wet roller rink is not explicitly assumed in the document), or is inapplicable because the USAC/RS sanction had not yet been issued when the plaintiff's injuries occurred.

On the specific and stipulated facts of this case, I must reject each of the plaintiff's arguments. I find that the "waiver and release" is applicable and binding, and I therefore sustain the defendant's plea in bar.

The stipulation of facts into which Ms. Morrison entered effectively disposes of her first contention. The plaintiff, having stipulated that she signed the contract voluntarily, without duress or undue influence, and for valuable consideration, argues that the court should decline to enforce the document because the parties occupied unequal bargaining positions; because the document is a "contract of adhesion." Her stipulations effectively preclude this argument. *See, Rhea v. Horn-Keen Corp.*, 582 F. Supp. 687 (W.D. Va. 1984); *Hiett v. Barcroft Beach, Inc., et al.*, 18 Va. Cir. 315 (1989) (a Fairfax County Circuit Court case argued on the same day that Ms. Morrison was injured). One who stipulates that her act was voluntary cannot — effectively in the same breath — say that it was nonvolitional.

Ms. Morrison next argues that public policy bars enforcement of the agreement. However, there is no public policy reason that a national association which exists (*inter alia*) to foster amateur roller skating competition should be prohibited from requiring those who choose to participate in its functions to give up the right to make damage claims against, among others, the proprietors of rinks where roller skating practices and meets are held. USAC/RS is not, *e.g.*, a common carrier or a public utility, *see, Fralin v. American Cyanamid Co.*, 239 F. Supp. 178, 180 (W.D. Va. 1965); *Hiett, supra*, 18 Va. Cir. at 318, and authorities there cited; Ms. Morrison's relationship to the national roller skating organization hardly "mirrors," as the plaintiff suggests, that of "low-income families desiring to give their sons the

advantages of a Boy Scout camp," as in *Fedor v. Mauwehu Council, Boy Scouts of America, Inc.*, 21 Conn. Supp. 38, 143 A.2d 466, 467 (1958).

Ms. Morrison argues that, even if the waiver and release agreement is not invalid as a general proposition, it is ineffective in this case because of the absence of "magic words" from the language of release. Though the instrument recites that Ms. Morrison recognizes the "risk of serious injuries and economic losses which might result . . . from . . . the action, inaction or negligence of others . . . the condition of the premises"; though the instrument thereupon recites that she, "intending to be legally bound, [does] waive, release and forever discharge any and all rights and claims for damages which [she] may have or which may hereafter accrue to [her], against . . . the owner of the site where . . . practice sessions and competitions take place . . . for any and all damages which may be sustained and suffered by me in connection with my association with or entry in and/or arising out of my participating in . . . USAC/RS activities or practice sessions in preparation therefore [sic]," the plaintiff argues (relying upon cases from other jurisdictions) that the contract is ineffective to bar a claim for simple negligence because the language of release does not include the words "negligence," "neglect" or "fault." To state the proposition is to refute it.

The language of the instrument is (as legal documents go) clear and straightforward. It is unambiguous. It expresses an appreciation for the risks to be undertaken, and it clearly sets forth the skater's decision to relinquish her rights to make a liability claim in the event of injury. Notwithstanding the authorities upon which the plaintiff relies, I decline to hold that a document, straightforward and unambiguous on its face, fails of its obvious purpose because the "magic word," "negligence," appears one sentence before the language of waiver. *See, Krazek v. Mountain River Towns, Inc.*, 884 F.2d 163 (4th Cir. 1989); *Hiett, supra*, 18 Va. Cir. 320–21.

Similarly, Ms. Morrison argues, quoting a Florida appellate court, that "for express assumption of the risk to be valid, either by contract or by voluntary participation in an activity, it must be clear that the plaintiff understood that she was assuming the particular conduct by the defendants which caused her injury." *VanTuyn v. Zurich American Insurance Co.*, 447 So. 2d 318 (Fla. App. 1984). Assuming, *arguendo*, that the principle applies here, it does not follow that

the waiver and release failed to indicate an appreciation for the risk that the defendant's simple negligence in maintaining or caring for the premises could lead to injury or damage. What the plaintiff argues here is that since the contract did not mention water on the roller rink floor, then the waiver and release is ineffective if the injury was caused by water on the rink floor, which was there due to defendant's negligence. The argument fails. Appreciation for the risks inherent in negligent maintenance of the premises is apparent from the face of the contract.

(Another assumption of risk case, cited by the plaintiff at oral argument, *Benoit v. Marvin*, 138 A.2d 312 (Vt. 1958), is, as the defendants argue, factually and legally inapposite, notwithstanding its setting in a roller skating rink.)

The plaintiff's most ingenious argument is that this Court should not even reach the questions discussed above because the waiver and release agreement, by its terms, is inapplicable. This is so, she asserts, because at the time she was injured, no USAC/RS sanction had been issued. On the facts as stipulated, however, this lack of sanction on the date of injury is irrelevant.

As the plaintiff concedes on brief, "It is true that the lack of a sanction was a fortuitous event and that plaintiff believed the event was sanctioned." In fact, the parties have stipulated, before this action was filed, USAC/RS "issued a document formally recognizing the October meet as being a USAC sports program (a 'sanction') . . . ."

As the facts are before this Court, then, the only reasonable conclusion to be drawn is that Ms. Morrison *was* injured during a practice session for "a USAC sports program" a USAC/RS activity, within the contemplation of the contract. Nowhere is it stipulated or argued that an event, to be a "USAC/RS activit[y]" must be sanctioned *in advance*; no argument is made that the "sanction" issued in 1990 is ineffective or of any lesser effect than a "sanction" issued before an event is held.

For me to hold that the "waiver and release" agreement is invalid because of the timing of the "sanction" would be for me, under the facts as stipulated, to rewrite the parties' contract, which I am not free to do.