## Richmond

### CECIL G. MONDAY v. EDGAR C. OLIVER AND JOHN DOE.

April 28, 1975.

Record No. 740564.

Present, All the Justices.

*David B. Worthy; Stone, Joyce, Worthy & Stone*, on briefs, for plaintiff in error.

*James W. Haskins; Frank O. Meade; Young, Kiser, Haskins & Mann, Ltd.; Meade, Tate, Meade & Daniel*, on briefs, for defendants in error.

Cochran, J., delivered the opinion of the court.

Edgar C. Oliver was injured on January 24, 1971, when the automobile operated by Herman Ashley, in which Oliver was riding as a passenger, collided with an automobile operated by Cecil G. Monday on Route 57 west of Bassett in Henry County. In his amended motion for judgment the plaintiff, Oliver, alleged that the accident was proximately caused by the joint negligence of defendants Monday and John Doe, an unknown operator of another vehicle, and he sought to recover damages from them jointly and severally.

A jury trial was held. At the conclusion of the plaintiff's evidence the trial court denied defendant John Doe's motion to strike the evidence as to him. After all evidence had been presented, John Doe renewed his motion to strike the plaintiff's evidence as to him. The motion was granted by the court which, over objections of Oliver and Monday, entered summary judgment for John Doe. Oliver then moved the court to strike defendant Monday's evidence on the issue of liability. The court, over Monday's objection, granted this motion and submitted the case to the jury solely on the question of damages. The jury returned a verdict for the plaintiff against Monday in the amount of $10,000. Monday's motion to set aside the verdict was denied, and Monday appeals the judgment order entered February 14, 1974, on the jury verdict.

The assignments of error challenge the rulings of the trial court in striking the plaintiff's evidence as to defendant John Doe and in striking defendant Monday's evidence on the issue of liability.

Ashley testified that it was snowing when the accident occurred at approximately 10:00 a.m.; that he was operating his automobile, equipped with snow tires, at 15 or 20 miles per hour because of road conditions; that he was proceeding in an easterly direction in his right-hand lane of the two-lane highway; that he came over a "blind hill" and saw two cars down the hill blocking the highway about 150 feet ahead of him; that the Monday car was headed west in Ashley's lane of travel and a car of unknown make was headed east in the westbound lane; that Ashley started "pumping" his brakes but could not stop and struck the Monday vehicle in the eastbound lane. Ashley further testified that when he first saw the Monday automobile and the unknown vehicle they were more or less side by side; that he cut his wheel to the right but his car continued straight ahead down the slope and into the Monday car; that he did not attempt to turn to the left because his left-hand lane was blocked by the unknown car; and that the unknown car was gone when he looked for it after the collision. Ashley could not say whether either the Monday car or the unknown car was stopped at the time of the accident, and he did not know when the unknown car left the scene.

Oliver's testimony corroborated that of Ashley except that Oliver testified that the Monday car "seemed to be sitting still" in the eastbound lane and that the left wheels of the unknown

car appeared to be at the left edge of the road when he first saw the vehicles.

Monday testified that he was proceeding west up the hill in the westbound lane of Route 57 when he saw a late model maroon Cadillac stopped in front of him, headed east in the same lane; that Monday stopped about two car lengths from the Cadillac; that the operator of the Cadillac got out, looked up and down the highway and motioned Monday to come around him; that Monday pulled over into the eastbound lane and started around the Cadillac; and that about the time the cars were "even", or the front end of the Monday car "maybe a little bit past" the Cadillac, Monday saw the Ashley car coming over the hillcrest about 150 feet away. Monday asserted that he intended to clear the eastbound lane by backing into a driveway that he had just passed on the south side of the highway, because, with snow on the road, he thought he could back downgrade more easily than go up the hill around the Cadillac. He testified that the collision occurred one or two seconds after he first saw the Ashley car. He also testified that when he got out of his car after the accident he saw the John Doe vehicle "going on down the hill."

On cross-examination Monday testified he had thought about backing into the driveway to turn around and to return home before he saw the Ashley car. However, although he did not know whether he had already stopped his vehicle when he first saw the Ashley car, he did not think he had "plumb stopped" until he had "seen the car coming." John Doe's counsel introduced discovery depositions in which Monday indicated that he had stopped and had begun to back down when the Ashley vehicle first appeared.

Monday's wife was called as a witness for defendant John Doe. She testified that she was riding on the front seat with her husband when the accident occurred; that she had never driven a motor vehicle; that they stopped before they reached the John Doe vehicle, whose operator called to them to go around him; that before starting around the John Doe car her husband had said he would go to the driveway and turn around because the road "was too slick"; that Monday had gone past the Cadillac and was backing towards the driveway and looking back when she first saw the Ashley car; that by the time she "hollered" to her husband the Ashley car "had done struck us"; that she did not

know whether Monday saw the Ashley car before she did and started backing; and that when she first saw the Ashley car it "looked ... like it was down the hill there." She also testified that part of the Cadillac was on the shoulder and part in their lane of travel but that she did not know whether the car was "plumb against" the guard rail.

The judge of the trial court, by letter opinion dated February 7, 1974, stated that Monday's testimony was "so contradictory and so vague it really is impossible to determine to any degree of satisfaction just what he was doing or intending to do as he pulled into the eastbound lane alongside John Doe", and that the testimony was "of no help to me." It thus appears that he disregarded this testimony, which was all the evidence adduced on behalf of the defendant Monday. The trial judge stated that John Doe, after directing Monday to pull around him, must have gone "immediately back to his car, gotten in and driven off because at the time of the collision he was out of sight." He therefore concluded that any negligence of Doe in being on the wrong side of the road was "insulated by the intervening independent negligence of Monday."

The conclusion that Doe was out of sight when the accident happened is not supported by the evidence. Monday testified that he saw the Doe car going down the hill after the accident, and no witness could testify that the vehicle did not remain at the scene until the collision occurred. Although it is not known whether Doe left immediately before or after the accident, it is apparent that he was able to remove himself from the scene with some rapidity. Therefore, we agree with Monday's contention that from the evidence the jury could have inferred that Doe negligently remained stopped in the westbound lane even if he was not negligent in operating his vehicle into that lane, and that the accident might not have occurred but for this fact. Whether his negligence continued until the time of the accident and proximately contributed to it or terminated and was superseded by negligence of Monday were questions of fact for the jury and not questions of law for the trial court. *Cox v. Mabe*, 214 Va. 705, 709, 204 S.E.2d 253, 256-57 (1974). Accordingly, the trial court erred in striking plaintiff's evidence as to John Doe.

In his letter opinion the trial judge rejected Monday's testimony concerning the accident and accepted as conclusive

the testimony of Mrs. Monday, who was called as a witness by John Doe. Accordingly, the judge concluded that Monday was looking back and was backing down the hill when the Ashley vehicle topped the hill, and that the decision to turn around in the driveway "was completely unrelated and unprovoked by the appearance of the Ashley vehicle." This was, indeed, an inference which could reasonably be drawn from Mrs. Monday's testimony, although Mrs. Monday could not say that her husband had not seen the Ashley car before she did and had stopped and then begun to back down to the driveway. Moreover, Mrs. Monday's testimony might be construed to mean that she did not see the Ashley vehicle until it was below the crest of the hill. A defendant whose evidence has been struck, however, is entitled to have his evidence reviewed in the light most favorable to him. *Whitt* v. *Godwin,* 205 Va. 797, 139 S.E.2d 841 (1965). The only evidence for Monday was his own testimony and he is, therefore, entitled to all fair and just inferences therefrom.

A jury might have inferred from Monday's testimony that he was not negligent in undertaking to pass around the John Doe car; that he was moving alongside the Doe vehicle when he first saw the Ashley car; that, while he had previously considered backing into the driveway, he had made no decision until he saw the Ashley car, at which time he stopped and began to back down rather than attempting to move up the hill and into the westbound lane beyond the Doe Cadillac; and that in so doing Monday acted as a reasonable man. Here again it was the jury's prerogative to determine the credibility of Monday and of the other witnesses and decide what evidence to accept or reject in whole or in part. *See Vepco* v. *Mabin,* 203 Va. 490, 494, 125 S.E.2d 145, 148 (1962). We hold, therefore, that the trial court erred in striking Monday's evidence and in entering summary judgment against him on the question of liability.

For the reasons assigned the judgment of the trial court is reversed and the case remanded for a new trial not inconsistent with the views herein expressed.

*Reversed and remanded.*