**Richmond**

Lɪɴᴡᴏᴏᴅ Lᴇᴇ Wᴇʟʟs

v.

Vᴇʀɴɪᴛᴀ I. McMᴀʜᴏɴ

March 12, 1982.

Record No. 810057.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson, and Stephenson, JJ., and Harrison, Retired Justice.

*Allen J. Gordon (Richard L. Kreger; Gordon & Brown,* on briefs), for appellant.

*Michael J. Blachman (Bangel, Bangel & Bangel,* on brief), for appellee.

PER CURIAM.

In this case, Vernita I. McMahon sought to recover damages from Linwood Lee Wells for personal injuries she sustained on August 26, 1978, when her automobile was struck from behind by a vehicle operated by Wells. Defendant denied any negligence and alleged that McMahon was guilty of negligence which was the sole proximate cause of the collision. At trial, each party moved to strike the other's evidence. The trial court sustained McMahon's motion, denied Wells', and submitted the case to the jury solely on the issue of damages. The jury found for McMahon in the amount of $45,000, and the court entered judgment in her favor. This appeal followed.

The record shows that about 3:00 a.m. on August 26, 1978, both McMahon and Wells were travelling north on Highway 627 in Suffolk. The road is a two-lane, hard-surfaced highway with seven-foot shoulders on each side. Mrs. McMahon was looking for her son, whom she believed was walking home from a skating rink. She estimated she was driving between 30 and 40 mph when she saw her son about 200 feet ahead of her, walking along the right shoulder of the road. She testified that she activated her right-turn signal, put her arm out the window to signal she was braking, and, upon drawing closer to her son, turned on her four-way flashing lights. She said she maintained her speed because she noted in her rear view mirror a car overtaking her at a speed of approximately 50 mph; when she was about ten feet from her son this vehicle, driven by Wells, struck her car and knocked it forward 80 to 100 feet.

The testimony of Mrs. McMahon's teenage son was essentially the same as his mother's. He stated that at the time his mother gave a signal, the Wells car "was about 100 feet behind her —

maybe more than that." He estimated his mother's speed between 30 and 40 mph and said that the accident occurred about five feet before his mother's car reached him. He said that Wells applied his brakes prior to the accident.

Wells testified that he and his nephew were following McMahon at a speed of approximately 40 to 45 mph. He said that McMahon passed her son and about 25 or 30 "steps" later "stopped right in the middle of the road" without giving any signal to indicate a stop, other than the appearance of her brake lights. Wells said that he applied his brakes and reduced his speed to an estimated six or seven mph, but that the front of his car still collided with the left rear of the plaintiff's automobile. The highway was straight at the point of impact, and the speed limit was 55 mph. Wells testified that he could have passed the McMahon car to her left "if she hadn't stopped, slowed down so quick."

The parties are in sharp disagreement about the distance Wells was from McMahon when he first noticed her brake lights. In a pretrial deposition, Wells estimated the distance at 175 yards. At trial he estimated the distance to be five or six car lengths of fifteen feet each. This discrepancy was pursued on Wells' cross-examination, and the following exchange occurred:

Q. So if you say seven that would be a hundred and five feet.
A. A hundred and five.
Q. Okay. Well, which is correct? As a matter of fact, you were a hundred and seventy-five yards behind her when you saw her stoplights came [sic] on; is that correct?
A. Approximately could have been, yes. Like I say, I don't — it is hard to judge it at nighttime like that.
Q. When you saw lights come on you were a hundred and seventy-five yards behind her; is that correct?
A. I ain't going to deny that I said that. Yes, I said that.
Q. And that is what your testimony is today.
A. Yeah.
Q. Yeah. Did you get that?
COURT REPORTER: (Court reporter nodding head affirmatively.)
THE WITNESS: Yes. You got it in the book.

Plaintiff maintains that Wells is bound by this testimony. She argues that if he saw her brake lights at a distance of 175 yards,

he was negligent as a matter of law in failing to avoid the collision. However, this accident occurred at night, and it is obvious that the witnesses' estimates of distances and speed were approximations only. Wells was either unwilling or unable to provide an unequivocal answer when asked to estimate his distance from McMahon when she applied brakes, and further was unwilling to give a positive answer as to which of his estimates was correct. It is unclear whether his responses on cross-examination indicated a substitution of 175 yards in lieu of 105 feet as his estimate or merely his agreement not to question the accuracy of the reporter's transcript of his deposition.

This case presented typical factual issues concerning negligence, contributory negligence, and proximate cause. According to McMahon's testimony, she was proceeding in the nighttime on a straight highway at a speed of 30 to 40 mph, preparing to stop on the right shoulder; although she had not reduced her speed substantially, she had applied brakes sufficiently to activate her brake lights; she had given a hand signal to indicate her intention to stop; and she also had turned on her flashing lights before she was struck from behind. Based upon this version of the accident, a jury could find Wells negligent.

Since the defendant's evidence was struck, however, he is entitled to have the evidence viewed in the light most favorable to him and to have all fair and just inferences drawn therefrom. *Monday* v. *Oliver and Doe,* 215 Va. 748, 214 S.E.2d 142 (1975); *Whitt* v. *Godwin,* 205 Va. 797, 139 S.E.2d 841 (1965). Wells' testimony was that, after McMahon passed her son, she stopped suddenly on the highway immediately in front of Wells without giving any signal of her intention, other than the appearance of brake lights. His unequivocal statement is that if she had not stopped so suddenly or slowed down so quickly, he could have passed her to the left. If the jury accepts this statement as true, it could find that McMahon stopped her vehicle on the highway without giving the required statutory signals in a manner plainly visible to the driver of the overtaking vehicle and that Wells was not negligent in striking the rear of her car.

The officer who investigated the accident testified that he found skid or brake marks made by the Wells vehicle for a distance of 55 ½ feet. The damage to the vehicles was slight; each party drove his car from the scene of the accident. The officer said further that at the time of his investigation, McMahon estimated her

speed to have been 30 mph, and Wells estimated his to have been 30 to 50 mph.

The testimony of the principals and the other witnesses raised issues of fact which should have been resolved by the jury. We find that the trial court erred in determining as a matter of law that Wells was negligent and that McMahon was free from contributory negligence. Accordingly, the judgment of the trial court will be reversed and the case remanded for a new trial on all issues.

*Reversed and remanded.*